CONSOLIDATED DEVELOPMENT AND ENGINEERING CORP., *et al.*, v. ORTEGA CO.

158 So. 94.
En Banc.
Opinion Filed September 26, 1933.
On Rehearing, July 27, 1934.
On Further Rehearing, November 21, 1934.

*Milam, McIlvaine & Milam* and *Knight, Adair, Cooper & Osborne,* for Appellants;

*W. T. Stockton, Blount & Jones* and *Stockton, Ulmer & Murchison,* for Appellee.

Per Curiam.—In this cause the Court finds itself equally and permanently divided as to whether the decree appealed from should be affirmed or reversed. Mr. Chief Justice Davis, Mr. Justice Whitfield and Mr. Justice Buford are of the opinion that the decree appealed from should be reversed and the cause remanded for the entry of an appropriate decree in accordance with the views entertained by them as to the applicable law of the case. Mr. Justice Ellis, Mr. Justice Terrell and Mr. Justice Brown are of the opinion that there is no error in said decree and that it should be affirmed as entered.

Accordingly the final decree appealed from is affirmed because of an equally divided appellate Court, on the authority of State *ex rel.* Hampton v. McClung, 47 Fla. 224, 37 Sou. Rep. 51.

Davis, C. J., and Whitfield, Ellis, Terrell, Brown and Buford, J. J., concur.

### On Rehearing.

Davis, C. J.—This was an appeal from a final decree of foreclosure which was affirmed by an even division of this Court under date of September 26, 1933. A rehearing having been granted, the case is now before us for final disposition on rehearing.

On March 2, 1925, the complainant, Ortega Company, as vendor, and the defendant, Consolidated Development & Engineering Corporation, as purchaser, entered into a contract for the sale by the former and the purchase by the latter of the lands foreclosed upon in this suit. The contract shows on its face that the mortgagee had sold the property for development into a subdivision and that it anticipated that the purchasers from the subdividers would acquire an

interest therein. The subdivision was subsequently brought into being, developed and put upon the market under the name of "Venetia," but remained subject to the lien of the base mortgage, which, by agreement between the parties at interest, had superseded the contract of purchase and sale.

There was no contest in the court below between the Ortega Company, as mortgagee, and Consolidated Development & Engineering Corporation, as mortgagor. The contest below and on this appeal is between the Ortega Company, as mortgagee, and certain lot purchasers who claim title to or equities in certain of the lots into which the lands were subdivided, through Consolidated Development & Engineering Corporation. Their claim accrued subsequent to the recording of the base mortgage, but subject to certain clauses therein which provided for partial releases. It is upon special provisions of the mortgage that the appellants base their asserted equities.

One of the clauses of the mortgage provided that "in the event the mortgagor loses its rights hereunder through the foreclosure of this mortgage * * * the mortgagee will release to any bona fide purchaser from the mortgagor a lot or lots so purchased by such purchaser prior to such loss, upon the purchaser paying over to the mortgagee herein all sums remaining unpaid under his contract of purchase, provided, that sum shall not be less than the release value of such lot as herein fixed and that at least as much as such release value as herein fixed shall be paid to the mortgagee within one (1) year from such event; and provided further that such purchaser shall otherwise fully comply with his contract of purchase."

Another paragraph of the mortgage authorized the mortgagor (when not in default "hereunder") to procure from the mortgagee a partial release from the mortgage upon par-

ticularly stated terms and conditions as to certain specified payments.

It was the successful contention of the mortgagee in the court below, and such is its contention in this Court, that under the particular terms of paragraph 12 of the mortgage, bona fide grantees of lots in the mortgaged subdivisions after default of the mortgagor are precluded from obtaining partial releases of their own lots from the mortgage at the price specified in the base mortgage to be applicable to the original mortgagor, notwithstanding the fact that for months after the undisclosed default on the original mortgagor's part in paying one of the installments called for in the base mortgage, the mortgagee declared no default, nor elected to bring about any acceleration of the maturity of the mortgage notes, nor otherwise gave any indication that it was going to use the original mortgagor's default as a predicate for forfeiting not only the original mortgagor's rights but the rights of the original mortgagor's bona fide grantees of lots in the subdivision. It is not denied that the mortgagee continued for a long time after the mortgagor's defaualt, which so far as the record shows, was never disclosed to the lot purchasers in any formal way, to receive payments of principal and interest on the mortgage and otherwise to treat the mortgage as still in good standing.

The contention is likewise made by the mortgagee that notwithstanding the effect of clause 13 in the mortgage which was apparently incorporated therein to provide against any such contingency, that the base mortgage may be now unconditionally foreclosed as against *bona fide* lot purchaser grantees of the mortgagor, except where the contracts are still executory, in which event it is admitted that their lots would be subject to the partial release provision of said paragraph 13.

That the land was sold in the first instance by the mortgagee with the *intent* and purpose that it should be developed by the mortgagor for the mutual advantage of both mortgagor and mortgagee, into a subdivision of residential lots for sale to the general public, is obvious from the terms of both the antecedent contract of sale and the subsequently given purchase money mortgage which superseded the sales contract.

This Court has held that in cases involving the attempted foreclosure of real estate mortgages between the parties themselves, that a mortgagee may, by his conduct inducing his mortgagors to believe and act upon the belief that he will not enforce his mortgage, be estopped as to them, in the absence of some notice of his intention to declare the whole debt payable unless installments are paid. Jaudon v. Equitable Life Assurance Society, 102 Fla. 782, 136 Sou. Rep. 517; Gus' Bath, Inc., v. Lightbown, 101 Fla. 1205, 133 Sou. Rep. 85; Kreiss Potassium Phosphate Co. v. Knight, 98 Fla. 1004, 124 Sou. Rep. 751.

This Court has likewise held in cases involving personal property that any *secret* reservation of title in the vendor will not be allowed to prevail as against the equitable claim of a *bona fide* purchaser of the subject matter of the sale from the vendee, when it appears that the vendor has expressly or impliedly given to his vendee the right to sell the property to *bona fide* purchasers, although the property would otherwise be clearly subject to a reservation of title right secured by a contract retained by the vendor. Glass v. Continental Guaranty Corp., 81 Fla. 687, 88 Sou. Rep. 876.

Applying the foregoing principles of equity to the facts presented in the present case, a majority of the Court have reached the conclusion on rehearing that so long as lot purchasers from the mortgagor and developer of the subdivision were uninformed of any default by the mortgagor,

and the mortgagee permitted lots to be marketed, that such lot purchasers were entitled to assume that the mortgagor remained in good standing with his mortgagee, or if not in good standing, that the mortgagee had elected to so hold him out to the buying public with respect to the sale of lots to purchasers, as a means of enabling the mortgagor to raise some of the money with which to pay for the land and increase its value by developing it through sales of parcels of the mortgaged subdivision to the general puplic, especially in view of the fact that the mortgagee had provided in the mortgage for precisely such method of development.

Both the release clauses under consideration in this case were inserted in the mortgage presumptively prepared at the direction of the mortgagee, whose security against the mortgaged land it was, but whether such clauses were inserted as the *express* direction of the mortgagee or not, the rule is that, because they appear in an instrument which was prepared for the mortgagee's benefit, that any ambiguity in language, or doubt as to the meaning of such release clauses, must be construed most strongly against the mortgagee. Capital City Bank v. Hilson, 59 Fla. 215, 51 Sou. Rep. 853.

A majority of the Court are of the opinion that under the foregoing rule the release clauses, when referring to the term *"Bona fide* purchasers" of lots, must not be regarded as having so used it in the narrow and limited sense attributed to it by the construction contended for by the mortgagee, but on the contrary, should be regarded as implying what the law usually comprehends when the designation *"bona fide* purchasers" is used in an ordinary instrument of writing.

A majority of the Court are further of the opinion that those who stand in total succession to the mortgagor are entitled to the benefit of the releases provided for in paragraph 12 of the mortgage, since that paragraph inures to

the benefit of lot vendees who stand in the position of total succession. The conclusion of the Court in this respect is that because the mortgagee in its approval of the mortgagor's plan of subdivision and sale of lots subject to the mortgage impliedly, if not expressly, consented to the severance of its mortgage lien into parcels as to lots sold to purchasers, insofar as such severance might be necessary to protect the rights of those who might thereby assume a position of total succession to the mortgagor as to their own individual parcels, the mortgagor's default in the payment of the mortgage as a whole, cannot be applied to individually sold lots, so as to put the parcel holders also in default, until after reasonable notice of the mortgagee's intention to claim the default as against the security *en masse* is directly brought home to such parcel holders, and they have failed to do that which is necessary to prevent the application of the general default of the original mortgagor to their individual holdings, namely, applied for releases under paragraph 12.

The two clauses, paragraphs 12 and 13, stand together. There is no good reason, other than a strict, harsh technical construction of paragraph 13, to limit the benefits of that clause to those only who happen to have paid up their contracts in full before a final decree of foreclosure. The two clauses are in *pari materia* and were intended to advance but one general purpose insofar as those are concerned who now stand as individual lot owners in a position of succession to the mortgagor. Both clauses were an essential element of the scheme contemplated to be accomplished when the mortgagee joined in the mortgagor's plan for subdividing and disposing of the property to lot buyers on the general market who might be induced to purchase solely because of such clauses. The conditions upon which the sales of subdivided lots were permitted to be made to the public

were obviously designed to enable those who became successors and assigns or purchasers as well as purchasers themselves, to have the benefit of some release provision whereby their parcels could be released in the event of compliance with their own contracts of purchase, even though the original mortgagor-developer became in default. A conditional foreclosure and sale only, with the extraordinary privilege of redemption by parcels from the foreclosure decree within one year's time before the sale is fully confirmed, is apparently what was contemplated by paragraph 13 of the mortgage for the protection of those acquiring interest as original *bona fide* lot purchasers provided they have not forfeited or waived their rights as such.

Viewing the situation as a whole, it is evident that the mortgage in this case was merely an incident to a larger transaction between those who were in reality co-operatively promoting a subdivision by what was in a practical sense a joint adventure in development and sale of that subdivision, one as mortgagor and developer—the other as mortgagee and beneficiary of the development, although neither was or are in law joint adventurers in a legal sense as that term is understood when giving consideration as to their liability as such toward third parties.

It is no sufficient answer to the assertion of the special equities claimed by the lot holders as arising out of such a situation as was involved in the execution of the mortgagor's plan of subdivision and sale of lots as was contemplated and carried out in this case by the co-operation of both mortgagor and mortgagee, for the mortgagee to now assert that its mortgage gave it special contract rights of which those who claim under the mortgagor must have had notice.

The strict letter of a contract being dealt with in a court of equity should not be allowed to prevail over other sub-

stantial equities that have arisen, not only out of the letter of that contract, but also out of the manner and substance of its mutually accepted and relied on execution during a time that it was of advantage to one of the parties not to insist upon the strict observance of the contract in order to promote dealings by third parties with the other contracting party.

Appellee's criticism of the failure of the appellants to tender payments under the release clauses, or their failure to affirmatively offer to pay any amounts found to be due, becomes immaterial when it is observed that in this suit appellants have not sought nor asked for a decree of specific performance to compel the mortgagee to affirmatively execute to them formal instruments of release. The claim of an extraordinary right of partial redemption even after final decree of foreclosure and sale, when predicated upon the terms of the mortgage itself, is defensive in nature.

A majority of the Court are of the opinion on rehearing that under the showing made by the record in this case the decree should be reversed and the cause remanded for further consideration by the Chancellor who should determine what, if any, of the appellant lot purchasers, or their successors in interest were at the time of the final decree, not in default under their own purchase contracts with the mortgagor. In the event that the Chancellor shall determine that the appellants, either as lot purchasers or as successors in interest thereof, have, under the principles stated in this opinion, become entitled to the right of partial redemption, the Court should then decree such protection as against the mortgagee, for the benefit of the equitable rights of the original purchasers, their own mortgagees and grantees to such extent as shall be found to be necessary to give them the privilege of release of their property from the final decree of foreclosure, as provided for under the terms and

conditions of paragraphs 12 and 13 of the mortgage as one of the other shall be found applicable, conditioned of course, upon such other reasonable prerequisites as the Court may find to be appropriate to do equity in each individual case.

. Our conclusion is that an equitable consideration of paragraphs 12 and 13 of the mortgage as applied to the factual situation by the interested parties as between themselves and toward the public, requires that these clauses shall be enforced and carried into effect for the benefit and protection of *all* those third parties who, under the privilege that the mortgagee gave to the mortgagor-developer to deal with the mortgaged property by developing it and selling it, have ultimately come into their present interests in particular lots constituting parcels of the mortgaged land, without any notice before institution of suit of any intent on the mortgagee's part to insist upon the original mortgagor's strict compliance with the mortgage as a basis for claiming a forfeiture of the mortgagor's rights under the mortgage, to the exclusion of the special redemption privileges given to the mortgagor-developer and grantees of lots acquired from it.

. The contention that Consolidated Development & Engineering Corporation, or its assigns, the Ortega Company, have acquired any rights in any of the utilities installed on the mortgaged property, which rights would be superior to the lien of the base mortgage on the land described in it, has been examined and is found not to be well founded. So the finding of the decree in favor of appellee in that particular must be approved.

Subject to the foregoing statement of controlling principles of law, the final decree is reversed on rehearing without prejudice, and the cause remanded for reconsideration by the Chancellor in the light of the principles set forth in

this opinion and for further proceedings not inconsistent herewith.

. WHITFIELD, TERRELL and BUFORD, J. J., concur.

. ELLIS and BROWN, J. J., dissent.

## ON FURTHER REHEARING.

ENTRY OF APPELLATE DECREE UNDER SECTIONS 4637-4638 C. G. L.

PER CURIAM.—After this case was decided on rehearing by an opinion filed herein on July 27, 1934, determining the respective rights of the parties specifically above named as appellants and as appellee, the appellee filed its petition for a further rehearing herein, and also its separate motion praying that in lieu of reversal of the decree appealed from (which had already been executed by a sale of the properties since no supersedeas was obtained) that this Court exercise its powers under Sections 4637-4638 C. G. L., 2918-2919 R. G. S., by herein rendering such judgment or decree as the Court below ought to have given, and causing the same to be certified to the Court below to carry into execution this Court's decision and determination in the premises.

The motion was presented and argued orally by the parties, consent to that effect having been first had and obtained, and thereafter the parties by stipulation submitted to this Court for its consideration and determination proposed forms of appellate decrees to be entered to express the changes necessary to be made in the final decree appealed from to conform to this Court's opinion on rehearing adopted and filed herein on July 27, 1934, as hereinbefore mentioned.

So this cause having been heretofore submitted to this Court upon the motion filed by the appellee, Ortega Com-

pany, a corporation, to modify the judgment and decree heretofore entered herein, whereby it was decreed that the decree below should be reversd, and the said motion having been argued by counsel for appellants and appellee, and the Court being advised of its judgment to be given in the premises, and it appearing to the Court that it is not necessary to reverse the decree below in order to give to the appellants all the relief to which they are entitled, the former judgment and decree of this Court is, therefore, hereby modified so as to read as hereinafter set forth.

It Is Considered, Ordered ane Decreed by the Court that the final decree entered below be not reversed, but that said decree be and the same is hereby modified, (a) by adding to paragraph 3 of said final dcree the words "except as hereinafter provided" and (b) by adding to paragraph 8 of said decree, after the words "Special Master shall pay," the figures and words "$880.00 of," and by adding to said paragraph, after the words, "over to the complainant," the words " and the balance over to The American Trust Company, as Trustee, as aforesaid," and (c) by adding to paragraph 11 of said decree, after the word "hereinabove," in the second line thereof, the following words, "and hereafter," and by striking from said paragraph 11 all that portion thereof beginning with the words "that, however," and ending with the words "specified lot," and (d) by adding to paragraph 12 of said decree, after the words "notes and contracts hereinafter referred to," the words "in paragraphs 6, 7 and 9 of this decree," and by adding, after the words "provision in this decree is particularly made," the words "in paragraphs 6, 7 and 9 hereof," and by adding to paragraph 14 of said decree the following words: "said sale, however, shall be subject to the rights of certain defendants to release their lots as hereinafter provided," and (e) by eliminating from paragraph 21 of

said final decree the names of the defendants Bertha Bouton Turck, Eleanor Louise Turck, American Trust Company, a corporation, as Trustee, and W. E. Browne Decorating Company, a corporation, and (f) by adding to said decree an additional paragraph, to be numbered 25, reading as follows:

"25. The defendants, Bertha Bouton Turck, Eleanor Louise Turck, American Trust Company, a corporation, as Trustee, and W. E. Browne Decorating Company, a corporation, shall have the right, for the period of six months from the filing in the Circuit Court of the Supreme Court's mandate herein, to redeem any or all of the lots claimed by them in their respective answers, by making tender and payment into the registry of the said Circuit Court, within such period, of the amount of the release price as fixed for such lot or lots in the mortgage; and upon the payment of such release price or prices into the registry of the Court, within said period, the purchaser at the Special Master's sale, or his or its successor in title, shall by good and sufficient deed of conveyances (but without warranting title in any respect) convey the lot or lots so released to the defendant or defendants making the deposit of release money in the time and in the manner as above set forth, or to whomsoever such defendant or defendants may designate as the party to receive title to such lot or lots, and in such event said conveyance shall be free and clear of all rights, interest, claims and demands of all parties to this suit, or any one claiming by, through or under them since the institution of this suit, the jurisdiction of this cause as to any lot or lots as to which any of the above named four defendants have release privileges being retained by this, the said Circuit Court, for the purpose of enforcing and performing the rights of the parties hereto in connection with such redemption privileges; and at the expiration of

said period of six months from the date of the filing of said mandate, the said four above named defendants and all persons claiming by, through or under them, or any of them, since the institution of this suit shall; without any further action or order by the Court, be forever barred and foreclosed of and from all right or equity of redemption, and from any and all right, title, interest, claim or demand of what kind or nature soever in and to all of the above described property, except such part thereof as may have been redeemed in the manner and in the time as above set forth."

IT IS FURTHER CONSIDERED, ORDERED, AND DECREED by the Court that said final decree, as modified as above set forth, be and the same is hereby affirmed.

IT IS FURTHER CONSIDERED, ORDERED, AND DECREED that the costs of this appeal be taxed one-half against the appellants and one-half against the appellee who are specifically named in the caption of this appellate decree.

IT IS FURTHER CONSIDERED, ORDERED, AND DECREED that the petition for rehearing filed by appellee herein be and the same hereby is granted to the extent necessary to give effect to this appellate judgment now being entered pursuant to Section 4637 C. G. L., 2918 R. G. S., but otherwise the same is denied.

All of which is ordered to be certified to the Court below with and as a part of the judgment and mandate of this Court in the premises, there to be carried into execution as provided by Section 4638 C. G. L., 2919 R. G. S., and due course or procedure in such cases made and provided.

Let a mandate be issued accordingly.

DAVIS, C. J., and WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.