**In the Matter of Danny Lee FARRER, Debtor.**

**Henry M. HERBERT, Plaintiff,**

**v.**

**Danny Lee FARRER, Defendant.**

**Bankruptcy No. 82–943.**

**Adv. No. 82–414.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

May 18, 1983.

Stephen L. Kramer, Tampa, Fla., for plaintiff.

Louis B. Vocelle, Jr., Lakeland, Fla., for defendant.

## ORDER ON ORDER TO SHOW CAUSE AND ORDER ON MOTION TO PERMIT MINING

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS CAUSE came on for hearing upon a Motion for Order to Show Cause filed by the Plaintiff and upon Motion to Permit Mining filed by the Defendant in the above-styled adversary proceeding. This adversary proceeding is between two Chapter 13 Debtors. The Defendant is the Debtor in the above-styled Chapter 13 case; the Plaintiff is a debtor in a Chapter 13 case pending in a Bankruptcy Court in Virginia.

In order to put the present controversy in perspective, a brief recital of the procedural posture is necessary.

On April 2, 1981, the Plaintiff agreed to sell the Defendant forty acres of contiguous land. Ten acres were conveyed free and clear for the purchase price of $33,750. The other thirty acres were contractually divided into three ten-acre parcels which were to be sold pursuant to a contract for deed. The land was to be released in ten acre increments upon payment of the sum of $33,750. The Articles of Agreement provided for a down payment of $13,500 and monthly payments in the amount of $650 principal plus 10% interest per annum.

The Defendant failed to abide by the conditions of the Articles of Agreement and the Plaintiff filed a foreclosure action in the Circuit Court of the Twelfth Judicial Circuit for DeSota County, Florida (Case No. 82–54–CA). A Final Judgment of Foreclosure was entered on April 9, 1982. A foreclosure sale of the property was scheduled for May 14, 1982, but was stayed when the Defendant filed his Chapter 13 Petition on May 12, 1982.

The Plaintiff filed a Complaint seeking relief from the automatic stay in order to allow the foreclosure sale to proceed. The parties arrived at a compromise settlement which was approved by the Court and a Final Judgment was entered. According to the terms of the compromise and of the Final Judgment, the Defendant was, *inter alia,* ordered to make double payments to the Plaintiff in order to cure arrearages and to refrain from mining or otherwise depleting any of the encumbered property.

Several months later, the Plaintiff filed a Motion for Order to Show Cause contending that the Defendant was mining on encumbered property in violation of the Final Judgment. The Defendant then filed a Motion for Order Permitting Mining and an emergency hearing was conducted on that Motion. It was determined that the Defendant was temporarily unable to fill contracts for shell from the ten acres he owned outright because his ten acres were under water at that time. At the emergency hearing, the Court authorized the Defendant to mine only 2,000 yards of shell on the first tract of encumbered property (Tract # 1). Further consideration of Defendant's Motion to Permit Mining was reserved for the upcoming hearing on the Order to Show Cause in the same adversary proceeding.

At the hearing, the Court heard conflicting testimony as to whether or not the Defendant was mining on encumbered property in violation of the Final Judgment. The Plaintiff, Mr. Herbert, testified that he visited the property and observed mining on the first and second encumbered tracts. On cross-examination, the Plaintiff admitted that he was approximately thirty-eight feet from the property line at the time of his observation. It was also revealed that although the subject property is contractually divided into tracts, there are no physical markings or boundaries indicating where one tract ends and the next tract begins.

The Defendant, Mr. Farrer, admitted that he had been digging on Tract # 1, but stated that he had been digging only the

2,000 yards of shell which he was permitted to dig pursuant to the Court's order entered on February 22, 1983. He denied mining on the second ten-acre tract of encumbered land (Tract # 2), but stated that he had been piling dirt and shell on Tract # 2.

In light of the foregoing, the Court is satisfied that the Plaintiff failed to establish with the requisite degree of proof that the Defendant had been mining on encumbered property in violation of the Final Judgment entered by this Court on July 20, 1982.

This leaves for consideration whether or not the Court should enter an Order permitting the Defendant to mine on Tract # 1.

The Defendant contends that he should be permitted to mine Tract # 1 because he has substantially performed his obligations to the Plaintiff under the Articles of Agreement as to Tract # 1. According to the Articles of Agreement, Tract # 1 is to be released upon payment of $33,750. The Defendant contends that he has paid $32,-800.10 to the Plaintiff to date, including the $13,500 down payment. In addition to the $32,800.10, the Defendant has also paid interest at the rate of 10% per annum on each payment of principal. According to the Defendant, the $13,500 down payment should be applied toward the release of Tract # 1.

The Plaintiff, on the other hand, contends that the Defendant has not substantially performed as to Tract # 1. He contends that the $13,500 down payment should not be applied toward the release of any tract, but should be applied only at the end of the entire contract for deed.

The parties seek to have this Court construe the Articles of Agreement in order to determine whether or not the Defendant has substantially performed as to Tract # 1. The Articles state in pertinent part:

"Releases of land from this Agreement for Deed shall be made on a minimum of 10 acres for the sum of $3,375 per acre. Release is to be made beginning with the South 10 acres and future releases to be on adjoining tracts. And the said party of the second part hereby covenants and agrees to pay to the said party of the first part the sum of Sixty Seven Thousand Five Hundred Dollars in the manner following: $13,500 down receipt of which is hereby acknowledged. Balance payable at the rate of $650 principal per month together with interest at the rate of ten per cent (10%) per annum."

(Df's Exh. # 1).

According to the Articles of Agreement, the Defendant paid $13,500 "down." There is no language stating how the $13,500 is to be applied.

The Defendant urges that the Court construe the Articles of Agreement in his favor. He contends that the Articles of Agreement is, in fact, a contract for deed and the Plaintiff, therefore, has the same interest in the subject property as a mortgagee under a mortgage. *Hoffman v. Semet,* 316 So.2d 649, 651 (Fla. 4th DCA 1975); *H & L Land Co. v. Warner,* 258 So.2d 293, 295 (Fla. 2d DCA 1972). The Defendant argues that a sale of real property pursuant to a contract for deed inures to the benefit of the vendor since he retains title to the subject property until the property is paid for in full. Furthermore, ambiguous language which appears in an instrument prepared for the benefit of the mortgagee must be construed against the mortgagee. *Consolidated Development & Engineering Corp. v. Ortega Co.,* 117 Fla. 438, 158 So. 94, 96 (Fla.1934).

The Defendant's argument would be persuasive if the Articles of Agreement contained ambiguous language concerning how the $13,500 should be applied. Unfortunately, there is no ambiguous language for this Court to construe; there is no language in the Articles of Agreement relating to this issue at all. The document itself, therefore, is insufficient to resolve this conflict.

The Court is equally unable to resolve this conflict by looking to the mutual intent of the parties at the time they entered into the contract for deed. It is undisputed that the parties never discussed the manner in which the $13,500 "down" was eventually to be applied. It is equally clear that the Plaintiff intended to hold the $13,500 until the conclusion of the contract, and that the

Defendant at all times relevant to this controversy intended that the $13,500 be applied toward the release price for Tract # 1. Inasmuch as the Court cannot resolve this dispute by construing the language of the Articles of Agreement nor by ascertaining the mutual intent of the parties, the Court must look to the totality of the circumstances to determine whether or not the Final Judgment should be amended to permit the Defendant to mine on Tract # 1.

It is without dispute that since the entry of the Final Judgment in this adversary proceeding on July 20, 1982, the Defendant has been making bi-monthly payments in order to cure arrearages. At the time of the hearing on this motion, the Defendants had paid $19,300.10 in addition to the $13,500 down payment to the Plaintiff.

It is also without dispute that the Plaintiff, while accepting the bimonthly payments from the Defendant, has failed to make his required mortgage payments to the Federal Land Bank of Columbia and is currently two years in default. It, therefore, appears that even if the Defendant were to tender $33,750 to the Plaintiff, the Plaintiff would be unable to convey to the Defendant clear title to Tract # 1 as required by the Articles of Agreement. To prevent further economic injury to the Defendant, this Court, by previous order, authorized the Defendant to make his bi-monthly payments to the Plaintiff's attorney rather than to the Plaintiff, such funds to be held in trust until further order of this Court.

It further appears that the subject property has been used for mining for a number of years, first by the Plaintiff and later by the Defendant. It is clear that at the time that the parties entered into the contract for deed, it was understood by both parties that the Defendant intended to mine the property. It was not until the Final Judgment entered on July 20, 1982 which was based on an application to compromise the controversy that the Defendant was prohibited to mine the encumbered property. Clearly, the Defendant entered into the agreement believing that the $13,500 would be applied to Tract # 1 and that he, therefore, would be entitled to a release of that tract in the near future.

The Final Judgment in paragraph (3)(c) states that the "Defendant shall not mine or deplete any real property upon which the Plaintiff has a lien without first securing a release of that property from the lien." Although it would appear that the Final Judgment would be controlling, it must be recognized that the parties did not have any more of a "meeting of the minds" as to the $13,500 down payment when they entered into the underlying compromise agreement than they had when they entered into the contract for deed. Neither the Articles of Agreement nor the Final Judgment specifies how or when the Defendant may obtain a release of any tract of land and thereby be entitled to mine.

The Court also recognizes that the Debtor's mining operation is his major source of income and is necessary to fund his Chapter 13 plan.

Upon consideration of all relevant factors, the Court is of the opinion that the Final Judgment should be amended to permit the Defendant to mine Tract # 1.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Order to Show Cause entered against the Defendant be, and the same hereby is, dismissed. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Order Permitting Mining filed by the Defendant be, and the same hereby is, granted and the Defendant shall be permitted to mine the first ten acre tract scheduled to be released pursuant to the Articles of Agreement (Df's Exh. # 1).