782 So.2d 436 (2001)
Richard M. NAGEL, as Personal Representative of the Estate of Marjorie E. Peirce, Appellant/Cross-Appellee,
v.
Charles CRONEBAUGH and Beverly Cronebaugh, etc., Appellees/Cross-Appellants.
No. 5D00-874.
District Court of Appeal of Florida, Fifth District.
March 2, 2001.
Rehearing Denied April 12, 2001.
*437 Terry L. McCollough, of Terry L. McCollough, P.A., Orlando, for Appellant.
Lawrence J. Phalin and J. Theodore Schatt, of Mateer & Harbert, P.A., Orlando, for Appellees.
ORFINGER, R. B., J.
Richard Nagel (Nagel), as Personal Representative of the Estate of Marjorie E. Peirce (Mrs. Peirce), appeals a final judgment denying foreclosure of a mortgage. Charles and Beverly Cronebaugh (the Cronebaughs) cross-appeal a judgment entered against them on Nagel's claim for fraudulent misrepresentation. We reverse.
Mrs. Peirce and Mrs. Cronebaugh met in Virginia in 1958. Mrs. Cronebaugh moved to Florida in 1962 and married Mr. Cronebaugh in 1965. While there was sporadic contact between them over the years, that contact increased in 1993 when Mrs. Cronebaugh advised Mrs. Peirce that they wished to purchase a lakefront home but could not do so until they sold their existing residence. According to Mrs. Cronebaugh, "one thing led to another," and Mrs. Peirce agreed to give the Cronebaughs $50,000.00 and loan them an additional $50,000.00 so they could purchase the lakefront home. The $50,000.00 loan was to be secured by a mortgage.
The Cronebaughs' attorney drafted the note and mortgage.[1] The note provided as follows:
FOR VALUE RECEIVED, the undersigned, (jointly or severally, if more than one) promises to pay to MARJORIE H. PEIRCE, or order in the manner hereinafter specified, the principal sum of To be determined at the time of contengencies [sic] below /100 DOLLARS ($ unknown) with interest from date of -0-percent, per annum on the balance from time to time remaining unpaid. The said principal and interest shall be payable in lawful money of the United State of America at 3720 East Old Gun Rd, Midlothian, VA or at such other place as may be designated by written notice from the holder to the maker hereof, on the date and in the following manner:
1. This is a demand note, due on October 1, 2018,
OR
2. Upon sale of the house by makers of this note, located at 7230 Lake Ola Dr., Tangerine, Orange County, Florida, Marjorie B. Peirce will get 1/3 of net proceeds from sale of the house to be determined by amount of sale of the house, minus any liens on the property at the time of signing this note, plus expenses of the sale,
OR
3. Upon the death of the makers, within 90 days of death, the heirs of makers *438 of this note will have the option of (A) # 1 above or (B) 1/3 of equity in the house, to be determined at the time of death and to be determined as follows" (1) by agreement between the parties; (2) if no agreement can be reached, each party will get an appraisal by separate MIA appraisers, and the mean average of the appraisals will be the value of the house, which the liens on the house shall be subtracted. All liens on the house shall be only as of the date of signing of this agreement,
WHICHEVER OCCURS FIRST
This note with interest is secured by a mortgage on real estate or even date herewith, made by the maker hereof in favor of the said payee, and shall be construed and enforced according to the laws of Florida.
If default be made in the payment of any of the sums or interest mentioned herein or in said mortgage, or in the performance of any of the agreements contained herein or in said mortgage, then the entire principal sum and accrued interest shall at the option of the holder hereof become at once due and collectible without notice, time being of the essence; and said principal sum and accrued interest shall both bear interest from such time until paid at the highest rate allowable under the laws of the State of Florida. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the even of any subsequent default....
The Cronebaughs obtained a bank mortgage for the remainder of the purchase price and, with the money provided by Mrs. Peirce, closed on the home. Shortly after the closing, Mrs. Peirce began paying one-third of the mortgage payment to the bank although she was under no obligation to do so. These payments continued until her death in December, 1996. Mrs. Cronebaugh testified that she made these payments because "she chose to." Nagel alleged that these payments were made because the Cronebaughs misrepresented their financial condition to Mrs. Peirce causing her to be concerned that if she did not help keep the first mortgage current, her second mortgage would be in jeopardy. The alleged misrepresentations were contained in several letters from Mrs. Cronebaugh to Mrs. Peirce which indicated that the Cronebaughs were "cash poor", were financially "stretched" and were "running scared on finances." After Mrs. Peirce died, Nagel demanded payment in full on the note based on his belief that paragraph 1 of the note created an obligation due on demand.[2] The Cronebaughs contended that paragraph 1 did not require payment until October 1, 2018. The trial court found that paragraph 1 was unambiguous and created an obligation due on October 1, 2018, unless one of the conditions specified in paragraph 2 or 3 of the note occurred first. The trial court also found, based on a "pattern of misrepresentation," that the Cronebaughs had made material misrepresentations to Mrs. Peirce about their financial situation resulting in damages in the amount of $19,899. Both parties appeal the judgment.

THE PROMISSORY NOTE
Nagel argues that paragraph 1 of the promissory note is controlled by section 673.1081(3), Florida Statutes (1993), that provides, "If an instrument, payable at a fixed date, is also payable upon demand made before the fixed date, the instrument is payable on demand until the *439 fixed date and, if demand for payment is not made before that date, becomes payable at a definite time on the fixed date." Thus, Nagel asserts that the language in paragraph 1 of the promissory note created a demand note payable at any time on demand by the payee and if no demand had been made, would become due on its own on October 1, 2018, or upon the earlier occurrence of the conditions in paragraph 2 or 3 of the note.
Chapter 673 governs negotiable instruments. See § 673.1021(1), Fla. Stat. (1993) ("This chapter applies to negotiable instruments."). In order for an instrument to be negotiable under the UCC, it must contain an unconditional promise to pay a sum certain. § 673.1041(1), Fla. Stat. (1993); see United Nat'l Bank of Miami v. Airport Plaza Ltd. P'ship, 537 So.2d 608, 609 (Fla. 3d DCA 1988) ("In order to qualify as a negotiable instrument a promissory note must contain an unconditional covenant to pay a certain sum in money."). Here the note does not provide a fixed principal amount. Hence, the note is not a negotiable instrument and section 673.1081(3) does not apply.
We turn, therefore, to general contract principles to interpret the note. The interpretation of a contract is an issue of law. As a result, this court is not bound by the trial court's conclusions regarding construction of the contract. See Inter-Active Servs., Inc. v. Heathrow Master Ass'n, Inc., 721 So.2d 433, 434 (Fla. 5th DCA 1998). Hence, decisions interpreting a contract are generally de novo. See Gilman Yacht Sales, Inc. v. FMB Invs., Inc., 766 So.2d 294 (Fla. 4th DCA 2000); Powertel, Inc. v. Bexley, 743 So.2d 570 (Fla. 1st DCA 1999), rev. denied, 763 So.2d 1044 (Fla.2000).
While the trial judge found that paragraph 1 of the note unambiguously created an obligation due October 1, 2018, we disagree. A phrase in a contract is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one. Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So.2d 1000, 1002 (Fla. 2d DCA 1995). Insofar as the language contained in paragraph 1 of the note is ambiguous as to the ability of the holder to demand payment prior to 2018, the ambiguity must be interpreted against the party who selected that languagein this case, the Cronebaughs. See Banksville, N.V. v. McNeill, 529 So.2d 828 (Fla. 5th DCA 1988); Consol. Dev. & Eng'g Corp. v. Ortega Co., 117 Fla. 438, 158 So. 94 (1933). Because we conclude the note is ambiguous, we construe it against the Cronebaughs and find that the trial judge erred in determining that the note did not create a demand obligation.

THE FRAUDULENT MISREPRESENTATION CLAIM
The substance of Nagel's fraudulent misrepresentation claim against the Cronebaughs was that the Cronebaughs represented themselves to be in financial distress and that, without Mrs. Peirce's financial assistance, they would lose the property securing Mrs. Peirce's mortgage.
An essential element in any claim of fraudulent misrepresentation is competent, substantial evidence that a false statement concerning a material fact was made. Fraud is not presumed but must be proved. See Barrett v. Quesnel, 90 So.2d 706 (Fla.1956). While the Cronebaughs did tell Mrs. Peirce that "Chuck (Cronebaugh) [was] running scared on finances" and that it was "hell to be cash poor," we do not find that these statements were either proven to be false or, if false, were material.
Based on the foregoing, we reverse the final judgment of the trial court. We remand the matter to the trial court to determine *440 the amounts due on the promissory note and mortgage and direct the trial court to enter judgment for the Cronebaughs on the fraudulent misrepresentation claim.
REVERSED AND REMANDED.
GRIFFIN, J., concurs.
COBB, J., concurs specially, with opinion.
COBB, J., concurring specially.
I concur in the result reached by the majority. As I see it, the note is not ambiguous and it is a demand note, the same as it would be if it had been negotiable and construed pursuant to section 673.1081(3), Florida Statutes (1993). The statute is merely a codification of common sense, which should control the construction of any contract, negotiable or not. The trial court simply deleted the word "demand" from the mortgage note.
NOTES
[1] The Cronebaughs' appellate counsel, who was also trial counsel, did not draft the note and mortgage.
[2] Nagel's original demand was for repayment of $64,700 on the note. In his complaint, he sought repayment of "no less than $50,000" principal due on the note.