IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

HOME OUTLET, LLC,

      Appellant,

v.                                                                                       Case No.  5D15-2643

U.S. BANK NATIONAL
ASSOCIATION, ETC., ET AL.,

      Appellees.

_____/

Opinion filed June 24, 2016

Appeal from the Circuit Court
for Volusia County,
Sandra C. Upchurch, Judge.

Christopher R. Turner, of Christopher R.
Turner, PLLC, Orlando, for Appellant.

Mark Morales, of Florida Foreclosure
Attorneys, PLLC, Boca Raton, for Appellee.

PER CURIAM.

Home Outlet, LLC, ("Home Outlet") appeals the final judgment of foreclosure

entered on behalf of U.S. Bank National Association ("U.S. Bank").[1] Because we find that

U.S. Bank failed to reestablish a lost note, we reverse.

The borrowers executed the original note for $317,400, but stopped making

payments in 2007. Home Outlet then purchased the property securing the note at an HOA

---

[1] U.S. Bank was substituted for the original plaintiff, First Horizon, after First
Horizon assigned the mortgage and note to U.S. Bank.

foreclosure sale.[2] In 2012, the original lender filed a two-count complaint to reestablish a lost note and foreclose. Attached to the complaint were photocopies of the original note and mortgage, an assignment of the mortgage from MERS to the original lender, and an affidavit from an employee of the original loan servicer—Nation Star Mortgage, LLC—alleging that the original note was lost and the copy was a true photocopy of the original note, and providing that First Horizon would hold the borrowers harmless for any damages stemming from the lost note. The note was unindorsed.

At trial, U.S. Bank called only one witness, Vonterro White, an employee of its loan servicer, Fay Servicing. When the witness was asked about the lost note at trial, the following exchange occurred:

> [Bank]: Can you tell us where the original note is?
>
> [White]: The original note was lost by the prior servicer.
>
> [Bank]: And once you have reviewed your business records, can you tell us whether a diligent search was conducted?
>
> [White]: Yes.
>
> [Bank]: Okay. And can you tell us a little bit about that search or what that search entailed, so that we understand when you boarded the documents since the note was lost?
>
> [White]: As part of our preboarding checklist, we look for and request original copies of the note and mortgage to be provided to the custodian after our review. This particular loan we noticed that the original note was not in the file. It was not transferred. At that point we determined that there was a lost note affidavit provided; that the note was lost while the loan was being serviced by NationStar.

---

[2] Apparently the HOA foreclosed on its junior lien and a sale was held before this action was commenced. Home Outlet purchased its interest at that sale and is now the title owner of the property.

On cross-examination, White was questioned further about how he became aware that the note was lost:

> [Home Outlet]: Okay. How do you know that the note was lost in this case?
>
> [White]: Because at the servicing transfer, we looked for the original copy of the—excuse me—the original document, and we reached out to the prior servicer, and at that time it did confirm that the original note was lost.
>
> [Home Outlet]: How did they confirm that?
>
> [White]: In writing and they also provided us with a copy of a lost note affidavit.
>
> [Home Outlet]: What did they provide you in writing, other than the lost note affidavit, to confirm that the note was lost?
>
> [White]: I believe it was on the data transfer. There's a box that you check that says the note is lost. I believe on the transfer documents, they indicated that the note was not there.
>
> [Home Outlet]: Did you bring a copy of that document with you today?
>
> [White]: No.

White was then asked directly if he had "any knowledge of whether the note was lost as a result of a lawful seizure," and he replied, "No." While the lost note affidavit was attached to the original complaint, it was neither offered nor received into evidence. See Figueroa v. Fed. Nat'l Mortg. Ass'n, 180 So. 3d 1110, 1114 (Fla. 5th DCA 2015) (finding that the bank failed to reestablish a lost note because the affidavit was not offered or entered into evidence despite being attached to the complaint). The affidavit could have been judicially noticed—see § 90.202(6), Fla. Stat. (2015) (providing for the judicial notice of court records)—but it was not. Further, the original complaint itself, while verified, was certified

3

"true and correct to the best of my knowledge and belief," and thus was not necessarily based on personal knowledge. See Toyos v. Helm Bank, USA, 187 So. 3d 1287 (Fla. 4th DCA 2016) (holding that a verified complaint was insufficient to establish default since it was not necessarily based on personal knowledge). At the conclusion of the trial, the trial court found the lost note reestablished, and entered a final judgment in favor of U.S. Bank.

A trial court's determination of whether a party has reestablished a lost note is reviewed for sufficiency of the evidence. Correa v. U.S. Bank N.A., 118 So. 3d 952, 956 (Fla. 2d DCA 2013). An appellate court may reverse on finding a failure of proof. Seidler v. Wells Fargo Bank, N.A., 179 So. 3d 416, 417 (Fla. 1st DCA 2015). Section 673.3091, Florida Statutes (2012), sets out the requirements for reestablishing a lost note. It reads:

(1) A person not in possession of an instrument is entitled to enforce the instrument if:

   (a) The person seeking to enforce the instrument was entitled to enforce the instrument when loss of possession occurred, or has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred;

   (b) The loss of possession was not the result of a transfer by the person or a lawful seizure; and

   (c) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

§ 673.3091, Fla. Stat. (emphasis added).

A party seeking to reestablish a lost note may meet these requirements either through a lost note affidavit or by testimony from a person with knowledge. Figueroa, 180 So. 3d at 1114. If the party relies on a lost-note affidavit, the affidavit must establish that whoever lost the note "was entitled to enforce it when the loss of possession occurred;

4

the loss of the note was not the result of a transfer or lawful seizure; and [the bank] cannot reasonably obtain possession of the note because of the loss." Id. (quoting Branch Banking & Trust Co. v. S & S Dev., Inc., 2014 WL 2215703 (M.D. Fla. May 28, 2014)).

It is apparent that White's testimony relies on the prior servicer's affidavit since the only other evidence White claimed to have received about the lost note was the data transfer document, which, according to his testimony, had only a checked box to indicate a lost note. U.S. Bank concedes as much in its answer brief. Yet neither the lost-note affidavit nor the data transfer document was entered into evidence. Further, the lost-note affidavit itself was insufficient as it did not specify that the prior servicer was entitled to enforce the note when it was lost or that the note was not lawfully seized or transferred.

White's testimony, then, was insufficient to establish requirements (a) and (b) of the statute, and his knowledge came from a document—the lost-note affidavit—that was not entered into evidence. Cf. Gonzalez v. BAC Home Loans Servicing, L.P., 180 So. 3d 1106, 1108 (Fla 5th DCA 2015) (finding "testimony of a witness regarding business records that are not entered at trial is insufficient to prove standing in a foreclosure case"); Bowmar v. Sun Trust Mortg., Inc., 188 So. 3d 986, 988-89 (Fla. 5th DCA 2016) (holding that discussion of documents was insufficient to establish entitlement to foreclose). Since the lost-note affidavit was not entered into evidence, and White did not establish that he had any personal knowledge as to whether the original lender was entitled to enforce the note when it was lost or whether the note was lost during a transfer or lawful seizure, U.S. Bank failed to meet its burden to reestablish the lost note. Cf. Figueroa, 180 So. 3d at 1114 (reversing in part because "[the bank's witness] was unable to confirm that loss of

5

possession was not the result of a transfer or lawful seizure, nor did he have the requisite personal knowledge to testify regarding how the note was lost").

REVERSED for entry of an involuntary dismissal.

COHEN, WALLIS and LAMBERT, JJ., concur.