NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

HAZEL N. PETERS a/k/a HAZEL N.
JOHNSON; and UNKNOWN TENANT
1 n/k/a DAVE PETERS,

  Appellants,

v.

THE BANK OF NEW YORK MELLON,
f/k/a THE BANK OF NEW YORK, AS
TRUSTEE FOR BEAR STEARNS
ASSET BACKED SECURITIES TRUST
2006-4, ASSET BACKED
CERTIFICATES, SERIES 2006-4, and
LEO JOHNSON,

  Appellees.

Case No. 2D15-2222

Opinion filed May 26, 2017.

Appeal from the Circuit Court for Lee
County; James H. Seals, Senior Judge.

Mark P. Stopa of Stopa Law Firm, Tampa,
for Appellant Hazel N. Peters a/k/a Hazel
N. Johnson.

Kristen M. Crescenti, Christopher C. O'Brien
and Ronnie J. Bitman of Pearson Bitman
LLP, Maitland, for Appellee The Bank of
New York Mellon.

No appearance for Appellee Leo Johnson.

WALLACE, Judge.

Hazel N. Peters, a/k/a Hazel N. Johnson (Ms. Peters), challenges a final judgment of foreclosure in favor of The Bank of New York Mellon (the Bank) entered after a bench trial. Because the Bank failed to prove its ownership of the lost note that it attempted to reestablish and enforce, we reverse.

## I. THE FACTS AND THE PROCEDURAL BACKGROUND

On March 13, 1998, Ms. Peters and Leo Johnson executed a note in favor of ContiMortgage Corporation as the Lender. The note was secured by a standard residential mortgage on real property in Lee County, Florida. The mortgage also named ContiMortgage Corporation as the Lender.

On January 28, 2013, the Bank filed the underlying action to foreclose the mortgage and for the reestablishment of the note, which the Bank alleged had been lost. The Bank's complaint alleged September 18, 2008, as the date that the note went into default. The Bank filed a lost note affidavit dated on October 31, 2006, and executed on behalf of EMC Mortgage Corporation (EMC), a prior holder of the mortgage. In the affidavit, the affiant merely asserted that the note "was lost and has not been paid, satisfied, assigned, pledged, transferred or hypothecated in any way." The affidavit did not provide any details regarding the date or circumstances of the asserted loss of the note. A copy of the note was attached to the affidavit. The copy of the note did not reflect any indorsements or allonges. The Bank subsequently filed another lost note affidavit executed on behalf of Select Portfolio Servicing, Inc. (SPS), the current servicer for the loan. The copy of the note attached to the SPS affidavit was identical to the copy attached to the EMC affidavit.

- 2 -

Ms. Peters filed an answer and affirmative defenses to the complaint. In her answer, Ms. Peters denied the material allegations of the complaint and asserted numerous affirmative defenses. In pertinent part, Ms. Peters denied that the Bank had standing to enforce the note and mortgage, asserted that the Bank's action to reestablish the lost note was barred by the applicable statute of limitations, and claimed that the Bank had failed to comply with a condition precedent to foreclosure because it had not notified the borrower of the claimed assignment of the loan within thirty days of the assignment in accordance with section 559.715, Florida Statutes (2012).

The lost note was payable to ContiMortgage Corporation; it had not been indorsed in blank or payable to the order of the Bank. At trial, the Bank sought to establish its ownership of the lost note with a series of four assignments of mortgage. The first assignment, dated April 8, 1998, was from ContiMortgage Corporation to ContiWest Corporation. The second assignment, dated April 7, 1998, was from ContiWest Corporation to Manufacturers and Traders Trust Company. Although the second assignment was dated one day <u>before</u> the first one, it was recorded <u>after</u> the recording of the first one. The third assignment, dated June 28, 2010, was from Manufacturers and Traders Trust Company to EMC. Each of the first three assignments expressly assigned both the mortgage and the note that was secured by it.

The fourth assignment, dated December 7, 2012, was from EMC to the Bank. In pertinent part, the fourth assignment assigned "all of Assignor's right, title and interest all beneficial interest under a certain Mortgage, dated March 13, 1998, made and executed by Leo Johnson and Hazel N. Johnson fka Hazel N. Peters to

ContiMortgage Corporation . . . ."[1]  At trial, Ms. Peters argued that the fourth assignment was insufficient to establish the Bank's ownership of the lost note because it assigned only the mortgage, not the note.  The trial court ruled that the fourth assignment was sufficient to assign the note as well as the mortgage and rejected Ms. Peters' argument. The trial court admitted the certified copies of the four assignments into evidence over Ms. Peters' objection.

Counsel for the Bank conceded that the note and mortgage at issue had been the subject of two prior foreclosure actions filed in the Lee County Circuit Court. The first action was filed in 2001; the second was filed in 2004.  Notably, both actions, which were subsequently dismissed, included a count for the reestablishment of a lost note.  Based on the filing of the prior actions and the first lost note affidavit executed in 2006, Ms. Peters argued that the Bank's action to reestablish the lost note was barred because it had not been brought within the bar of the five-year statute of limitations set forth in section 95.11(2)(b), Florida Statutes (1997).  The trial court rejected this argument, reasoning as follows:

> The purpose of the statute of limitations is to try to prevent stale claims, okay, but my belief—and this is going to be the ruling of the Court—that the loss or discovery of the lost instrument is not a claim.  It's an event.  It's nothing that gives rise to a claim that would give rise to [a] cause of action.  The only time that there's going to be a claim resulting from a lost instrument is when it needs to be enforced and that is when it goes into default.  So the ruling of the Court . . . is going to be that there is no need once a lost negotiable instrument is discovered as being lost, that they have to file a cause of action to reestablish that note when that note is not being sought to be enforced.

---

[1]We understand that there appears to be one or more words missing from this operative language.  But the quote is accurate; we have not inadvertently dropped any words from the quoted language.

Upon inquiry by counsel as to the effect of the filing of the two prior actions to enforce the lost note on the accrual of the cause of action, the trial court reiterated its ruling that the statute of limitations had not run so as to bar the current action to reestablish the lost note.

The Bank called a single witness at trial, Cynthia Stevens. At the conclusion of the presentation of Ms. Stevens's testimony, the trial court rejected all of Ms. Peters' other arguments, including those based on the Bank's asserted lack of standing and noncompliance with the requirements of section 559.715. The trial court entered the final judgment of foreclosure on April 17, 2015. This appeal followed.

## II. MS. PETERS' APPELLATE ARGUMENTS

On appeal, Ms. Peters raises three points. First, she argues that the Bank failed to prove its standing to enforce the lost note. Second, Ms. Peters contends that the Bank's claim to reestablish the lost note is barred by the applicable statute of limitations. Third, she asserts that the Bank failed to prove that it gave Ms. Peters written notice of the assignment of the loan at least thirty days before the filing of the underlying action as required by section 559.715.

Ms. Peters' third point is without merit. See Brindise v. U.S. Bank Nat'l Ass'n, 183 So. 3d 1215, 1219-20 (Fla. 2d DCA), review denied, No. SC16-300, (Fla. Mar. 22, 2016); Nationstar Mortg., LLC v. Summers, 198 So. 3d 1162, 1162 (Fla. 1st DCA 2016) (per curiam affirmance citing Brindise with approval); cf. Bank of Am., N.A. v. Siefker, 201 So. 3d 811, 817-18 (Fla. 4th DCA 2016) (holding that section 559.715 was applicable to the mortgage foreclosure action brought by Bank of America, but that the statute did not operate as a condition precedent to bringing a mortgage foreclosure

action). Ms. Peters' second point regarding the application of the statute of limitations to an action for the reestablishment of a lost promissory note raises an issue that is apparently one of first impression in Florida. Although the statute of limitations issue raises interesting questions, our resolution of Ms. Peters' first issue makes it unnecessary to address her arguments regarding the statute of limitations. Accordingly, we turn now to the issue of the Bank's standing to enforce the lost note.

## III. DISCUSSION

Our review of a trial court's ruling regarding whether a foreclosure plaintiff has standing is de novo. See Gonzalez v. BAC Home Loans Servicing, L.P., 180 So. 3d 1106, 1108 (Fla. 5th DCA 2015) (citing Schmidt v. Deutsche Bank, 170 So. 3d 938, 941 (Fla. 5th DCA 2015)). "A trial court's determination of whether a party has reestablished a lost note is reviewed for sufficiency of the evidence." Home Outlet, LLC v. U.S. Bank Nat'l Ass'n, 194 So. 3d 1075, 1077 (Fla. 5th DCA 2016) (citing Correa v. U.S. Bank Nat'l Ass'n, 118 So. 3d 952, 956 (Fla. 2d DCA 2013)).

In order to establish its standing, the Bank had to prove either that it was the holder or the owner of the note. See Sorrell v. U.S. Bank Nat'l Ass'n, 198 So. 3d 845, 847 (Fla. 2d DCA 2016). Here, the Bank was not in possession of the note. The note was lost at least as early as October 31, 2006. When the note was lost, it had not been indorsed by the original lender either in blank or to another party.

Section 673.3091, Florida Statutes (2012), sets forth the requirements for a person not in possession of an instrument to enforce it:

> (1) A person not in possession of an instrument is entitled to enforce the instrument if:

(a) The person seeking to enforce the instrument was entitled to enforce the instrument when loss of possession occurred, or has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred;

(b) The loss of possession was not the result of a transfer by the person or a lawful seizure; and

(c) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(2) A person seeking enforcement of an instrument under subsection (1) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, s. 673.3081 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

The Bank could not prove that it was entitled to enforce the note when the loss of possession occurred. Thus, it had to prove that it "ha[d] directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred." § 673.3091(1)(a). Where, as in this case, the plaintiff cannot prove that it was entitled to enforce a note when it was lost, "the plaintiff may submit evidence of an assignment from the payee to the plaintiff or an affidavit of ownership." Boumarate v. HSBC Bank USA, N.A., 172 So. 3d 535, 538 (Fla. 5th DCA 2015); see also Focht v. Wells Fargo Bank, N.A., 124 So. 3d 308, 310 (Fla. 2d DCA 2013) ("A plaintiff who is not the original lender may establish standing to foreclose a mortgage loan by submitting a note with a blank or special [i]ndorsement, an

- 7 -

assignment of the note, or an affidavit otherwise proving the plaintiff's status as the holder of the note.").

The Bank's proof in this regard depended on the chain of four assignments of mortgage that began with the original lender. Each of the first three assignments expressly included an assignment of the note with the mortgage. However, the fourth assignment from EMC to the Bank omitted the critical language assigning the note along with the mortgage. Because the fourth assignment assigned only the mortgage and not the note, it was insufficient to transfer any interest in the note to the Bank. See Russell v. Aurora Loan Servs., LLC, 163 So. 3d 639, 641-42 (Fla. 2d DCA 2015); Kyser v. Bank of Am., N.A., 186 So. 3d 58, 60 (Fla. 1st DCA 2016); Jelic v. BAC Home Loans Servicing, LP, 178 So. 3d 523, 525 (Fla. 4th DCA 2015); see also Tilus v. AS Michai LLC, 161 So. 3d 1284, 1286 (Fla. 4th DCA 2015) ("[A]n assignment of mortgage, even if executed before the foreclosure action commenced, is insufficient to prove standing where the assignment reflects transfer of only the mortgage, not the note.").

In support of its standing to enforce the lost note, the Bank asserts that the reference in the operative language of the fourth assignment to "beneficial interest" in the mortgage denotes an inclusion of the note in the assignment as well as the mortgage. The Bank relies on Johns v. Gillian, 184 So. 140 (Fla. 1938), as authority for this proposition. In Johns, the Florida Supreme Court said: "Any form of assignment of a mortgage, which transfers the real and beneficial interest in the securities unconditionally to the assignee, will entitle him to maintain an action for foreclosure." Id.

at 143 (emphasis added). According to the Bank's reading of <u>Johns</u>, a reference in an assignment to the beneficial interest in a mortgage "actually assigns the Note as well."

We conclude that the decision in <u>Johns</u> does not support the Bank's argument regarding standing for two reasons. First, the Court's recitation of the facts in <u>Johns</u> reflects that the note and other securities at issue had been assigned to the plaintiff in that case by means other than the assignment of mortgage under review. <u>Id.</u> at 141, 144. Thus, the facts in <u>Johns</u> are easily distinguishable from the facts of the case before us. Second, the isolated snippet from the <u>Johns</u> opinion upon which the Bank places its focus—read in the context of the opinion as a whole—does not support the Bank's position. The Court's opinion in <u>Johns</u> is consistent with well-established Florida law "that a mortgage is but an incident to the debt, the payment of which it secures, and its ownership follows the assignment of the debt"—not the other way around. <u>Id.</u> at 143.

The Bank also points to the testimony of its trial witness, Ms. Stevens, as being sufficient to establish its ownership of the lost note. Ms. Stevens was a "case manager" employed by SPS. It appeared that SPS took over the servicing of the loan in August 2013. Thus, SPS's involvement with the loan began approximately six months after the filing of the underlying action in the trial court and almost five years after the loan went into default. After the four assignments of mortgage were admitted into evidence, Ms. Stevens testified that the Bank had acquired an ownership interest in the note "from a person [sic] who [was] entitled to enforce the note." The Bank did not present any documentary evidence regarding how and when it acquired its claimed

ownership interest in the note other than the fourth assignment.[2]  Ms. Stevens conceded that when the loan was boarded into SPS's records, the note had already been lost.  Indeed, the first lost note affidavit indicated that the note was lost at least as early as 2006.

Here, Ms. Stevens's testimony was insufficient to establish the ownership of the note.  SPS did not begin servicing the note until August 2013.  Obviously, Ms. Stevens had no personal knowledge about the Bank's claim to have acquired ownership of the note in 2006.  Moreover, Ms. Stevens's testimony in this regard was not supported by the limited documentary evidence about the loan that was available.  Because Ms. Stevens's testimony was not based on personal knowledge and was not supported by any documentation, we conclude that the testimony was insufficient to establish the Bank's ownership of the lost note.  See Tomlinson v. GMAC Mortg., LLC, 173 So. 3d 1121, 1122-23 (Fla. 2d DCA 2015); Home Outlet, 194 So. 3d at 1078; Gonzalez 180 So. 3d at 1108-09; Dixon v. Express Equity Lending Grp., LLLP, 125 So. 3d 965, 967-68 (Fla. 4th DCA 2013).

## IV.  CONCLUSION

We have considered the Bank's other arguments about standing, and we find them to be without merit.  Because the Bank failed to establish its ownership of the

---

[2]The lost note affidavit prepared on behalf of SPS and filed in the underlying action recited, in pertinent part, as follows: "The business records of [SPS] reflect that The Bank of New York, in trust for registered holders of Bear Stearns Asset Backed Securities 2006-4, Asset-Backed Certificates, Series 2006-4 (the "Noteholder") acquired the Note on or about October 1, 2006.  [SPS] services the Note and Mortgage on behalf of and as attorney in fact for the Noteholder."  The business records referenced here were not otherwise identified or described; nor were any copies of the business records attached as exhibits to the affidavit.

lost note, the trial court erred in entering the final judgment of foreclosure. Under these circumstances, we must reverse the final judgment and remand this case to the trial court with directions to enter an involuntary dismissal of the Bank's complaint. <u>See</u> <u>Wolkoff v. Am. Home Mortg. Servicing, Inc.</u>, 153 So. 3d 280, 283 (Fla. 2d DCA 2014); <u>Correa</u>, 118 So. 3d at 956-57.

Reversed and remanded with directions.


SALARIO and ROTHSTEIN-YOUAKIM, JJ., Concur.