# Third District Court of Appeal

## State of Florida

Opinion filed January 8, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0988
Lower Tribunal No. 17-27966
_____

**SHEDDF2-FL1, LLC, etc.**,
Appellant,

vs.

**New Miami Court, Inc., etc., et al.**,
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Carlos Lopez, Judge.

Agentis PLLC, and Christopher B. Spuches, for appellant.

Jeffrey P. Shapiro, P.A., and Jeffrey P. Shapiro, for appellees.

Before FERNANDEZ, BOKOR and GOODEN, JJ.

BOKOR, J.

SHEDDF2-FL1, LLC, the lender,[1] appeals a final judgment in favor of New Miami Court, Inc., the borrower, on claims for mortgage foreclosure, breach of promissory note, and reestablishment of a lost note. The lender argues that anti-waiver and estoppel provisions in the note and mortgage bar modification of same, and the lost note affidavit and trial testimony properly establish the lender's ability to foreclose. The borrower responds that the trial court's findings of waiver and estoppel were supported by the evidence, and that the lost note was not properly reestablished through the affidavit and testimony offered. After review of the record, we agree with the lender and reverse.[2]

First, the trial court erred by finding the maturity date tolled by waiver or equitable estoppel. This is because the loan documents unequivocally required any modifications, such as an extension of the May 11, 2017 maturity date, be in writing. The parties never executed any written modification of the loan documents as required by the relevant provisions:

---

[1] SHEDDF2-FL1, LLC is the assignee of Florida Community Bank, the successor in interest via merger with Great Florida Bank, the original holder of the note.

[2] "A trial court's determination of whether a party has reestablished a lost note is reviewed for sufficiency of the evidence." Home Outlet, LLC v. U.S. Bank Nat'l Ass'n, 194 So. 3d 1075, 1077 (Fla. 5th DCA 2016). But we review the trial court's interpretation of a contract, including a note and mortgage, de novo. See CitiMortgage, Inc. v. Turner, 172 So. 3d 502, 504 (Fla. 1st DCA 2015).

Section 3.01. <u>Waivers; Remedies Cumulative: Etc</u>. No waiver of any default in the performance of any covenant contained herein or in any obligation secured hereby shall at any time thereafter be held to be a waiver of any rights of the holder of the Note hereunder or under any of the Loan Documents, nor shall any waiver of a prior default operate to waive any subsequent default or defaults. All remedies provided for herein and in the Note and in the Loan Documents are cumulative and may, at the election of the holder of the Note, be exercised alternatively, successively or in any other manner and are in addition to any other rights provided by law or in equity.

. . . .

Section 3.05. <u>Changes</u>. Neither this Mortgage nor any term hereof may be waived, changed, discharged or terminated except by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought.

. . . .

This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement and supersedes all prior understandings and correspondence, oral or written, with respect to the subject matter hereof. No alteration or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

"When contracting parties elect to adopt a term or condition, including one addressing the question of modification, it is not the province of a court to second guess the wisdom of their bargain, or to relieve either party from the burden of that bargain by rewriting the document." <u>Okeechobee Resorts, LLC v. EZ Cash Pawn, Inc.</u>, 145 So. 3d 989, 993 (Fla. 4th DCA 2014). Thus,

"when a contract plainly provides that any modification must be in writing, all claims—however labeled—founded upon an alleged oral modification should generally be disposed of as a matter of law." Id. (acknowledging caselaw indicating that clear oral agreement can modify even contract that expressly precludes oral modifications where plaintiff can prove that modification was accepted by both parties, but finding that plaintiff could not orally extend contractual default date where contract expressly required extension evidenced by written memorandum); see also DK Arena, Inc. v. EB Acquisitions I, LLC, 112 So. 3d 85, 97 (Fla. 2013) (reversing finding of oral contract modification predicated on promissory estoppel where contract was subject to statute of frauds requiring all modifications to be in writing); Inlet Colony, LLC v. Martindale, 340 So. 3d 492, 496 (Fla. 4th DCA 2022) (rejecting waiver or estoppel arguments as basis for extending contractual closing date where contract provided that modifications must be in a signed writing).

The borrower correctly asserts that an oral modification may modify an agreement, even when a writing is required, where the oral agreement "has been accepted and acted upon by the parties in such manner as would work a fraud on either party to refuse to enforce it." Pro. Ins. Corp. v. Cahill, 90 So. 2d 916, 918 (Fla. 1956). But the Cahill exception isn't triggered under

4

the facts of this case. Although the lender continued to accept monthly payments after May 11, 2017, the parties never reached an agreement on the amount of default interest. There could be no "fraud on either party" caused by the refusal to enforce the purported agreement (which, again, wasn't an agreement) because, even if there were such an agreement, refusal to enforce it would still entitle the borrower to the money paid, plus any post-default interest and payment. The record established that as negotiations on the forbearance agreements were ongoing, the lender repeatedly continued to claim that the borrower was in default and sent multiple past due notices from May 2017 to September 2017. Accordingly, the trial court erred in concluding either that an agreement had been reached, or that the failure to enforce the agreement would work a fraud on either party. See, e.g., LRB Holding Corp. v. Bank of Am., N.A., 944 So. 2d 1113, 1114 (Fla. 3d DCA 2006) (rejecting argument that "the Bank's prior acceptance of LRB's late fees waived the Bank's right to enter a default without notice" where mortgage note expressly provided that lender may delay or forego enforcement rights without losing them).

As for the lost note, the lender properly reestablished the note pursuant to the statutory requirements. A party seeking enforcement of a lost note must establish that:

5

(a) The person seeking to enforce the instrument was entitled to enforce the instrument when loss of possession occurred, or has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred;

(b) The loss of possession was not the result of a transfer by the person or a lawful seizure; and

(c) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(2) A person seeking enforcement of an instrument under subsection (1) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, s. 673.3081 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

§ 673.3091, Fla. Stat. The lender here relied not only on the lost note affidavit, but also on the trial testimony of an employee with knowledge. See Home Outlet, LLC v. U.S. Bank Nat'l Ass'n, 194 So. 3d 1075, 1078 (Fla. 5th DCA 2016) (holding that the elements to reestablish a lost note may be satisfied "either through a lost note affidavit or by testimony from a person with knowledge"). The affidavit or testimony need not "establish exactly when, how, and by whom the note was lost." Wilmington Sav. Fund Soc'y v.

6

Charm-B, Inc., 363 So. 3d 1119, 1121 (Fla. 2d DCA 2023) (quotation omitted) (finding sufficient evidence to reestablish note where plaintiff provided evidence of "unbroken" chain of assignments that "necessarily encompassed the person entitled to enforce the note at the time of its loss"). However, the testimony or affidavit must establish that whoever lost the note "was entitled to enforce it when the loss of possession occurred; the loss of the note was not the result of a transfer or lawful seizure; and [the lender] cannot reasonably obtain possession of the note because of the loss." Home Outlet, 194 So. 3d at 1078 (quoting in part Figueroa v. Fed. Nat'l Mortg. Ass'n, 180 So. 3d 1110, 1114 (Fla. 5th DCA 2015)).

A lender need not establish with precision when or how a note was lost. But, as here, since the precise time of loss can't be established, the lender must show that unbroken chain of compliance that everyone in possession of the note had the authority to enforce it. In other words, the lender must present sufficient evidence through its affidavits and testimony that the original note holder, Great Florida Bank, and its successor in interest, Florida Community Bank, met the requirements of section 673.3091(1)–(2). The lender offered two affidavits from Kathleen M. Couch, a former vice president of Florida Community Bank, proffered as the person with most knowledge. Couch also testified at trial. Between the affidavits and the trial

testimony, Couch established that the note hadn't been transferred, no one else held an interest in the note, and that upon the merger of Great Florida Bank into Florida Community Bank, the loan was included and incorporated into Florida Community Bank's operating system and there had been no transfer or disposal of the note, save to the lender now seeking to enforce the note. Couch also testified that the Florida Community Bank assigned the note and other loan documents to the lender. Great Florida Bank's transaction history was also admitted into evidence at trial, reflecting that no transaction associated with a transfer, assignment, or sale of the note occurred before the merger.

Couch's testimony, combined with the affidavits, the accuracy of which she affirmed at trial, covered the unbroken chain of the loan's life from inception to enforcement. Specifically, that the note was incorporated from one bank's operating system to the successor in interest; that there was no transfer of the note; that the note was stored securely in a drawer located in a fireproof "note vault," which would be (and was) searched when a note could not be located; that the original lender owned and was entitled to enforce the note at the time of the assignment; and that the note was not within the original lender's possession, custody, or control at that time of assignment.

The borrower's cross-examination revealed that Couch didn't know when the note was lost. As noted earlier, there's no requirement to know exactly when the note was lost, or even whether it was lost before or after the merger—simply that the unbroken chain of entitlement to enforce the lost note be established per statutory requirements. Couch also conceded she had no firsthand knowledge regarding whether Great Florida Bank transferred, assigned, or sold the note to any third party prior to the merger. But there was no testimony suggesting that such a transfer or assignment occurred. Instead, the evidence established that the note was included in the computer records as part of the onboarding of Great Florida Bank's records into Florida Community Bank's system, the notes were kept in a secure vault, and Great Florida Bank's records (as well as Florida Community Bank's) revealed no transfer or assignment, save the final assignment to the lender seeking to enforce the note here. The borrower offered nothing to contradict this testimony, and no one has come forward with any competing claim or interest in the note or mortgage.

While the facts of this case present significant attempts to enter into a forbearance agreement on the part of the borrower, we are constrained to conclude that the trial court erred in finding that waiver or estoppel applied under the specific circumstances here. Additionally, the lender sufficiently

established, through the lost note affidavits and testimony, the ability to enforce the note. We therefore vacate the final judgment entered in favor of the borrower and reverse and remand with instructions to enter a final judgment in favor of the lender consistent with this opinion.

Final judgment vacated; reversed and remanded with instructions.