# Third District Court of Appeal

## State of Florida

Opinion filed April 24, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-3114
Lower Tribunal No. 10-3055
_____

## OneWest Bank, FSB,

Appellant,

vs.

## Luisa Palmero, et al.,

Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Abby Cynamon, Judge.

Burr & Forman LLP, and Joshua H. Threadcraft (Birmingham, AL), for appellant.

Carrera & Amador, P.A., and Juan M. Carrera; Legal Services of Greater Miami, Inc., and Jacqueline C. Ledón and Jeffrey M. Hearne, for appellees.

Before EMAS, C.J., and SALTER, FERNANDEZ, LOGUE, SCALES, LINDSEY, HENDON and MILLER, JJ.

### *ON MOTION FOR REHEARING EN BANC*

SCALES, J.

We grant rehearing *en banc*, withdraw the panel opinion in OneWest Bank, FSB v. Palmero, 43 Fla. L. Weekly D827 (Fla. 3d DCA Apr. 18, 2018), and substitute the following opinion in its stead.

OneWest Bank, FSB ("OneWest"), the plaintiff below, appeals from a final judgment entered in favor of the defendants below, Luisa Palmero ("Mrs. Palmero"), Idania Palmero and Rene Palmero, after a bench trial on OneWest's action to foreclose on a reverse mortgage. We affirm because OneWest failed to establish the occurrence of a condition precedent to its right to foreclose, i.e., that the subject property is not the principal residence of Mrs. Palmero, a surviving co-borrower under the instant reverse mortgage. See Smith v. Reverse Mortg. Sols., Inc., 200 So. 3d 221 (Fla. 3d DCA 2016).

## I. Factual Background and Procedural History

### A. The underlying facts

In August 2006, Roberto and Mrs. Palmero ("the Palmeros"), as husband and wife, completed a form residential loan application for an adjustable rate line of credit to be secured by a home equity conversion mortgage (commonly referred to as a reverse mortgage[1]) on their primary residence. It is not disputed that the

---

[1] As this Court explained in Smith, a reverse mortgage generally "allows elderly homeowners to receive monthly payments from a lender based upon the homeowners' equity in their principal residence." 200 So. 3d at 222-23. Importantly, unlike a traditional mortgage arrangement, "in a reverse mortgage arrangement . . . the homeowners' obligation to repay the lender ripens only upon the homeowners' death or when the homeowners move from their home." Id.

2

Palmeros' residence is their homestead property. The August 2006 loan application reflects that: (i) the Palmeros represented that they owned their primary residence in fee simple; (ii) the Palmeros applied for the loan as co-borrowers; and (iii) the Palmeros had conducted a face-to-face interview with a counselor from the prospective lender.

Despite their representation, the Palmeros did not own their primary residence in fee simple when they completed the August 2006 loan application. In fact, the record depicts a series of quitclaim deeds transferring ownership interest in the subject property back and forth between the Palmeros and their adult children, Idania and Rene Palmero, prior to that time. Consequently, on October 20, 2006, Idania and Rene executed a quitclaim deed on the subject property, granting a life estate to their father, Roberto Palmero, with the remainder to their mother, Mrs. Palmero, and to themselves.

On December 20, 2006, Roberto Palmero signed and executed, by himself: (i) a second, form residential loan application with the same lender, wherein Roberto stated that he held a life estate in the Palmeros' primary residence and that he was the only borrower on the loan; (ii) a home equity conversion loan agreement, which defined Roberto as the borrower; and (iii) an adjustable rate note, which identified Roberto as the borrower. The note provides that the lender is entitled to demand immediate payment in full if, among other things, "[a]

3

Borrower dies and the Property is not the principal residence of at least one surviving Borrower." As is the case with such loans that are secured by reverse mortgages, however, the note also provides that "Borrower shall have no personal liability for payment of the debt," and that "Lender shall enforce the debt only through the sale of the Property covered by [the reverse mortgage]."

That same day, December 20, 2006, to secure the note, **both** of the Palmeros signed and executed a reverse mortgage encumbering their primary residence. Consistent with the note, the reverse mortgage provides that: (i) the lender is entitled to demand immediate payment in full on the note if "[a] Borrower dies and the Property is not the principal residence of at least one surviving Borrower"; (ii) "Borrower shall have no personal liability for the payment of the debt" secured by the mortgage; and (iii) "Lender may enforce the debt only through the sale of the Property" secured by the mortgage.

The first paragraph of the reverse mortgage defines the "Borrower" as "[t]he mortgagor," and further describes the "Borrower" as "Roberto Palmero, a married man reserving a life estate unto himself with the ramainderman [sic] to Luisa Palmero, his wife, Idania Palmero, a single woman, and Rene Palmero, a single man." Later in the mortgage document, the "Borrower" covenants that "Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage,

4

grant and convey the Property and that the Property is unencumbered."[2] The "Borrower" further pledges to defend title to the property.

At the end of the mortgage, immediately before the signature block, the document states: "BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed and recorded with it." Below this statement, Roberto and Mrs. Palmero placed their signatures on the separate lines above their pre-printed names as "Borrower."[3,4] The mortgage was recorded in the Miami-Dade County public records on January 12, 2007; no other loan documents were recorded.

---

[2] We note that, because the encumbered property was the Palmeros' homestead residence, this covenant would be accurate *only* if *both* Roberto and Mrs. Palmero were the "Borrower." Art. X, § 4(a)(1), (c) Fla. Const.; Taylor v. Maness, 941 So. 2d 559, 563-64 (Fla. 3d DCA 2006) (recognizing that, even if the spouse owns only a beneficial interest and not title interest in the residence constituting his or her homestead, the spouse must join in the conveyance or encumbrance of the homestead property); see also Pitts v. Pastore, 561 So. 2d 297, 301 (Fla. 2d DCA 1990) ("[T]he mortgage is ineffectual as a lien until such time as either the spouse joins in the alienation or the property loses its homestead status."). In fact, while we need not, and do not, reach the issue, the reverse mortgage's validity may be challenged if Mrs. Palmero were somehow not a mortgagor. See. e.g. Ezem v. Fed. Nat'l. Mortg., 153 So. 3d 341, 345 (Fla. 1st DCA 2014).

[3] Two witnesses attest to the Palmeros' signatures. While it appears that only Mr. Palmero's signature was notarized, Mrs. Palmero has not, in this appeal, challenged the validity of the mortgage on this basis. New York Life Ins. Co. v. Oates, 192 So. 637, 641 (Fla. 1939) (recognizing that, subject to the doctrine of estoppel, the validity of the mortgage may be challenged where both spouses sign the mortgage but one spouse does not acknowledge the execution of the mortgage before a notary).

[4] Attached to the mortgage is also a "Signature Exhibit," where Mrs. Palmero and

5

At the trial, over the defendants' objection, OneWest introduced a document the Palmeros signed, labeled "Non-Borrower Spouse Ownership Interest Certification." Mrs. Palmero signed this document as the "Non-Borrower Spouse" directly below a statement – contradicting the reverse mortgage's condition precedent – "acknowled[ing] that should [her] spouse predecease [her] . . . and unless another means of repayment is obtained, the home where [she] reside[s] may need to be sold to repay Reverse Mortgage debt incurred by [her] spouse." Further, the document states, "[i]f the home where [she] reside[s] is required to be resold, [she] understand[s] that [she] may be required to move from [her] residence." The date this document was executed is illegible. No signature appears on the line designated for the closing agent/witness and the document is not notarized. The record reflects that this document was made part of the lender's closing file, but it was not recorded with the mortgage. Critically, the subject reverse mortgage does not include any of the language from the Non-Borrower

the adult children, Idania and Rene Palmero, placed their signatures on the separate lines above their pre-printed names "as remainderman." Defense counsel argued at trial that Idania's and Rene's signatures on this signature exhibit did not have any legal effect as to them. See In re Nunez, No. 17-21018-BKC-LMI, 2018 WL 1568524, at *1, n.5 (Bankr. S.D. Fla. Mar. 28, 2018) (suggesting that "[i]f an eligible mortgagor holds only a life estate when the mortgage is executed, all holders of any future interest in the property (remainder or reversion) will also be required to execute the mortgage to ensure that the mortgage is secured by a fee simple interest."). Because the trial court entered final judgment in favor of the defendants on another basis, see infra, the trial court never reached this question. Nor is any argument with respect thereto made in this appeal. Given our resolution of this appeal on other grounds, we need not, and therefore do not, reach this issue.

Spouse Ownership Interest Certification purporting to qualify Mrs. Palmero's designated status as "Borrower" in the reverse mortgage.

The lender issued regular payments on the note until Roberto Palmero passed away on August 18, 2008. Thereupon, the lender sent a notice letter to the Palmeros' residence, addressed only to Roberto, expressing sympathy to Roberto on his death, as well as to his friends and family. Therein, the lender accelerated the loan and declared all outstanding principal and interest due and payable. When Mrs. Palmero did not pay the balance declared due, on January 19, 2010, the lender filed the instant foreclosure action against Mrs. Palmero, Idania Palmero and Rene Palmero in the Miami-Dade County Circuit Court. During the pendency of this action, the reverse mortgage was assigned to OneWest, which was then substituted as the plaintiff in these proceedings.

*B. The litigation proceedings*

The lender's single-count complaint against the defendants sought only to foreclose on the reverse mortgage. While the complaint generally alleged that all conditions precedent to foreclosure had occurred, the complaint specifically alleged that "the basis for this default is the death of Roberto Palmero." Copies of the note and mortgage, and nothing else, were attached to the pleading.

Mrs. Palmero, Idania Palmero and Rene Palmero filed an answer denying the general allegation that all conditions precedent to initiating the action had

occurred. The defendants also raised the affirmative defense that the plaintiff could not foreclose on the reverse mortgage because: (i) the mortgage expressly identifies Mrs. Palmero as a co-borrower; and (ii) Mrs. Palmero "is a surviving Borrower, whose principal residence is the subject property."

The matter proceeded to a bench trial, held on March 17, 2014. The primary issue considered at trial was whether Mrs. Palmero is a "Borrower" as that term is used in the reverse mortgage. To this end, OneWest argued in its closing brief that, despite OneWest's foreclosure action being premised exclusively on the reverse mortgage, the trial court should consider all of the other documents executed by the Palmeros as part of the instant transaction (i.e., the loan applications, note, loan agreement, and Non-Borrower Spouse Ownership Interest Certification) to determine the meaning of the word "Borrower" in the reverse mortgage. According to OneWest, these documents showed that, notwithstanding the contrary language in the reverse mortgage, Roberto Palmero is the sole "Borrower" on the mortgage, as well as the note.

The defendants responded in their closing brief that because the "plain language of the mortgage . . . clearly identified Luisa Palmero as a named borrower," the trial court should not "delve into the subjective intent of the parties by looking outside the four corners of the mortgage instrument."

On September 11, 2014, the trial court entered a final judgment in favor of the defendants, declining to grant OneWest foreclosure on the reverse mortgage. Therein, notwithstanding its finding that Mrs. Palmero is not a co-borrower under the reverse mortgage, the trial court concluded that OneWest could not foreclose because of the federal statute governing the required contents of a reverse mortgage, like this one, which is insured by the federal Department of Housing and Urban Development ("HUD"). In relevant part, that statute expressly prevents HUD from insuring a reverse mortgage unless the mortgage prevents foreclosure until the homeowner and the homeowner's spouse die or sell the home. See 12 U.S.C. § 1715z-20(j) (providing that "[t]he Secretary may not insure a home equity conversion mortgage under this section unless such mortgage provides the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, sale of the home, or occurrence of other events specified in regulations of the Secretary," and defining "homeowner" as including the "spouse of a homeowner").

OneWest timely appealed the final judgment against it. A split panel of this Court reversed the trial court's judgment. OneWest Bank, FSB v. Palmero, 43 Fla. L. Weekly D827 (Fla. 3d DCA Apr. 18, 2018). We grant the appellees' motion for rehearing *en banc*, withdraw the panel opinion and substitute this opinion in its stead.

## II.    Analysis[5]

### A. Issue before this Court

In this appeal, OneWest argues that reversal is warranted because application of the federal reverse mortgage law was neither raised as an affirmative defense by the defendants in their pleadings, nor litigated by the consent of the parties at the bench trial. While we agree with OneWest that the federal reverse mortgage law was not properly considered by the trial court, and judgment should not have been entered below for these reasons, see e.g., Dysart v. Hunt, 383 So. 2d 259, 260 (Fla. 3d DCA 1980), this conclusion does not end our judicial labor.

We must still consider the dispositive issue of whether the trial court's initial determination that Mrs. Palmero is not a co-borrower under the instant reverse mortgage constitutes legal error.[6] Should this Court determine that, as a matter of

---

[5] "A trial court's construction of notes and mortgages involves pure questions of law, and therefore is subject to de novo review." Smith, 200 So. 3d at 224.

[6] We note that the appellees, the defendants below, did not file a cross-appeal of the trial court's finding that Mrs. Palmero is not a co-borrower. Yet, in this appeal, both parties extensively briefed this dispositive issue, and OneWest has not suggested, much less argued, that they have suffered any prejudice from the appellees' failure to file a notice of cross-appeal. Therefore, notwithstanding the lack of a notice of cross-appeal, we may review the trial court's determination. See City of Hialeah v. Martinez, 402 So. 2d 602, 603 n.4 (Fla. 3d DCA 1981) ("Since our jurisdiction to determine the validity of the order in question is clear, and a notice of cross-appeal is not jurisdictional, and since [the appellant] makes no claim of lack of notice or prejudice, we treat [the appellee's] brief as sufficient notice to the [appellant] that he cross-appeals from the trial court's ruling.") (citations omitted).

law, Mrs. Palmero is a "Borrower" as that term is used in the reverse mortgage, then this Court must affirm the final judgment on review for OneWest's failure to establish the occurrence of a condition precedent to its right to foreclose, i.e., that the subject property is not the principal residence of a surviving borrower under the mortgage. See Dade Cty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 644 (Fla. 1999) ("[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record.").

B. *This case is controlled by this Court's precedent in* Smith v. Reverse Mortgage Solutions, Inc.

When the trial court conducted the bench trial in this case on the issue of whether Mrs. Palmero is a "Borrower" under the instant reverse mortgage, this very issue was under consideration before this Court in Smith. See Smith, 200 So. 3d at 224 ("[W]e must determine, whether, as a matter of law, Mrs. Smith is a 'Borrower' as that term is used in the mortgage."). Smith considered a reverse mortgage containing provisions that, in all material respects, were identical to the provisions contained in the reverse mortgage in this case. There, as here, the married couple's principal residence was their homestead. Id. at 223 n.2. There, as here, only the husband signed an adjustable rate note identifying the husband as the "Borrower." Id. at 225 n.6. There, as here, both the husband and the wife signed the reverse mortgage identifying the husband and the wife as "Borrower" in the

11

signature block at the end of the mortgage, while only the husband was identified as "Borrower" in the reverse mortgage's opening paragraph. Id. at 225. The reverse mortgage in Smith also contained the same Borrower Covenants and the same provisions setting forth the condition precedent to foreclosure at issue here ("[a] Borrower dies and the Property is not the principal residence of at least one surviving Borrower."). Id. at 226.

In Smith, this Court determined unequivocally that, as a matter of law, "based on the plain and unambiguous language of the mortgage – which was executed by both Mr. and Mrs. Smith – (i) *both* Mr. and Mrs. Smith were treated as the "Borrower" under the mortgage, and (ii) *each* borrower is protected from the foreclosure of the mortgage until both borrowers die." Id. We reversed the final judgment of foreclosure against Mrs. Smith, concluding that, because Mrs. Smith was a "Borrower" under the mortgage – and was clearly still alive – and because the mortgagee had not alleged below that the homestead residence was no longer Mrs. Smith's principal residence, the mortgagee failed to establish the occurrence of a condition precedent to its right to foreclose. Id. at 228.

We are confident that the trial court, with the benefit of this Court's decision in Smith, would have applied Smith and concluded that Mrs. Palmero is a "Borrower" under the instant mortgage, without needing to address whether the federal reverse mortgage statute prohibited foreclosure in this case.[7]    See

12

Ramcharitar v. Derosins, 35 So. 3d 94, 98 (Fla. 3d DCA 2010) (stating that stare decisis obligates the trial court to "follow the decisions of the district courts of appeal 'unless and until they are overruled by the supreme court.'" (quoting Chapman v. Pinellas Cty., 423 So. 2d 578, 580 (Fla. 2d DCA 1982))). Our opinion in Smith controls the instant case, and compels us to affirm the trial court's final judgment for the defendants, albeit for a different reason than that relied upon by the trial court. To wit, because Mrs. Palmero, a co-borrower under the subject reverse mortgage, was still alive and the subject property was her primary residence on the date of trial,[8] OneWest failed to establish the occurrence of a condition precedent to its right to foreclose and the defendants were entitled to entry of judgment in their favor in this action. See also Edwards v. Reverse Mortg. Sols., Inc., 187 So. 3d 895, 896-97 (Fla. 3d DCA 2016) (citing Smith, reversing final judgment of foreclosure, and remanding for entry of final judgment in favor of the wife because "Mrs. Edwards is a co-borrower, and her death is a condition precedent to Reverse Mortgage's ability to foreclose on the property").[9]

---

[7]  We need not, and therefore do not, address the federal mortgage law in this appeal. Though, as we noted in Smith, our decision in this case is consistent with "Congress's clear intent to protect from foreclosure a reverse mortgagor's surviving spouse who is maintaining the encumbered property as his or her principal residence." Smith, 200 So. 3d at 227-28; 12 U.S.C. §1715z-20(j).

[8] OneWest's counsel stipulated at the bench trial that Mrs. Palmero was living at the subject property on the date of trial. Mrs. Palmero testified to this as well.

[9] Judge Miller's dissent posits that, based on the reverse mortgage's introductory

13

*C. The other documents that are part of this transaction*

For several reasons, we are not persuaded to reach a contrary result in this case merely because additional, unrecorded documents – specifically, the note, second loan application, and loan agreement executed solely by Roberto Palmero, and the Non-Borrower Spouse Ownership Interest Certification executed by both Palmeros – all identify Roberto Palmero as the sole "borrower" on the loan.[10]

i. *Inapplicability of Mutual Construction Doctrine*

First, while we recognize the doctrine of mutual construction generally requires that these documents be read and construed together, see 37 Fla. Jur. 2d Mortgages, Etc. § 94 (2018), the doctrine does not, on the facts of this case, permit us to graft inconsistent provisions found in these other documents onto the instant reverse mortgage. The primary purpose of the mutual construction doctrine – which applies to a mortgage, the note it secures and the other instruments that are executed by the same parties and as part of a single mortgage transaction – is "to determine and give effect to the intention of the parties." Id.; Sardon Found. v. New Horizons Serv. Dogs, Inc., 852 So. 2d 416, 420 (Fla. 5th DCA 2003) (applying the mutual construction doctrine, and stating "[t]he primary rule of

_____

paragraph, the only "mortgagor" is Roberto Palmero. As referenced, though, in footnote 2, *supra*, by definition Mrs. Palmero must be a "mortgagor" for OneWest to have a valid security interest in the Palmeros' jointly owned homestead property.

[10] No such documents were present in the record in Smith.

14

construction of a mortgage is to ascertain the intention of the parties"). Where though, as here, this Court has unqualifiedly determined that, as a matter of law, the "plain and unambiguous language of the mortgage" treats both signing spouses as the "Borrower," see Smith, 200 So. 3d at 226, there is no cause to utilize the mutual construction doctrine to look beyond the face of the mortgage in order to determine and give effect to the parties' intent.

Indeed, this Court has held that the mutual construction doctrine is applicable *only* to assist in clarifying an ambiguity in a document. See Sims v. New Falls Corp., 37 So. 3d 358, 361 (Fla. 3d DCA 2010) ("It is also urged upon this Court that the 'doctrine of mutual construction' permits the importation of the sentiment of the choice of law provision in the second mortgage into the promissory note . . . However, [the doctrine] may not be invoked to override the clear and unambiguous expression of agreement of the parties to a transaction."); see also In re Nunez, No. 17-21018-BKC-LMI, 2018 WL 1568524, at *2-3 (Bankr. S.D. Fla. Mar. 28, 2018) (citing Smith, and rejecting the mortgagee's argument that the court "look at all of the documents executed in connection with the Reverse Mortgage to ascertain the parties' intent" as to who was the borrower under the mortgage, where the mortgage unambiguously defined the term "Borrower" to include both the decedent and her daughter); KRC Enters., Inc. v. Soderquist, 553 So. 2d 760, 761 (Fla. 2d DCA 1989) (holding, in a mortgage

15

foreclosure action, that the language in a mortgage providing for acceleration at the option of the mortgagee prevailed over the automatic acceleration clause contained within the note); Grier v. M.H.C. Realty Corp., 274 So. 2d 21, 22 (Fla. 4th DCA 1973) (same). And, with respect to whether Mrs. Palmero was a "Borrower" under the instant reverse mortgage, we would be hard pressed to conclude the reverse mortgage is ambiguous – thus implicating the doctrine of mutual construction – given this Court's decisions in Smith and Edwards. In those cases, this Court considered reverse mortgages *identical* to the instant reverse mortgage and determined that, *as a matter of law*, the surviving spouse is a co-borrower under the reverse mortgage documents.

That other documents omit reference to Mrs. Palmero, or might characterize her as someone other than a borrower, does not change the fact that Mrs. Palmero signed the subject reverse mortgage as "Borrower," and the reverse mortgage's Borrower Covenants are accurate only if Mrs. Palmero is a "Borrower" therein. While contemporaneously executed loan documents may all be part of a single transaction, it is well settled that loan documents are separate and distinct instruments, each with their own legal effect. See Sims, 37 So. 3d at 360. When, as here, a reverse mortgage document unambiguously requires conditions precedent to foreclose, we are loath to graft inconsistent provisions contained in

16

collateral loan documents on the reverse mortgage to alter those unambiguous conditions precedent. Id. at 361-62.

This case is distinguishable from Nationstar Mortgage Co. v. Levine, 216 So. 3d 711 (Fla. 4th DCA 2017). In Levine, unlike our case, the parties to the reverse mortgage did not characterize Mrs. Levine as a "Borrower" in the document's signature block. Rather, the parties characterized Mrs. Levine as a "Non-Borrowing Spouse," while other parts of the reverse mortgage defined Mrs. Levine as "Borrower." Id. at 716. Based on that "internal contradiction" in the reverse mortgage, the Fourth District found a patent ambiguity on the face of the document requiring resolution by extrinsic evidence, and reversed a summary judgment for the surviving spouse. Id. at 716-17.

No similar "internal contradiction" exists here. Unlike in Levine, Mrs. Palmero's signature on the reverse mortgage was not characterized as a "Non-Borrowing Spouse." Mrs. Palmero was plainly and unequivocally characterized by the document's drafter as "Borrower." While the *parties* in Levine characterized Mrs. Levine as a "Non-Borrowing Spouse" in the reverse mortgage, OneWest seeks to have *the court* similarly characterize Mrs. Palmero as such in this case's reverse mortgage. We reject OneWest's attempt to have the court accomplish by judicial fiat what the parties themselves assuredly did not do.

ii. *The reverse mortgage does not integrate the Non-Borrower Spouse Ownership Interest Certification*

17

Second, on the facts of this case, we reject OneWest's argument that the Non-Borrower Spouse Ownership Interest Certification signed by the Palmeros must be considered part of the instant reverse mortgage. Paragraph twenty-six of the mortgage, titled "Riders to this Security Instrument," provides:

> If one or more riders are executed by Borrower **and recorded together with this Security Instrument**, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

(Emphasis added). The box for "Other (Specify)" within paragraph twenty-six is not checked, nor are the boxes for any of the other delineated riders. There are no attachments to the reverse mortgage beyond the Signature Exhibit. The Non-Borrower Spouse Ownership Interest Certification was neither witnessed, notarized, nor recorded in the public record with the mortgage. Had the parties intended to integrate into the reverse mortgage the Non-Borrower Spouse Ownership Interest Certification, or any collateral loan document, they certainly could have done so as plainly and expressly outlined in the reverse mortgage. They did not.[11]

---

[11] We note that the parties to the reverse mortgage certainly knew *how* to incorporate into the reverse mortgage definitions from collateral documents. Indeed, pursuant to paragraph four of the mortgage, the "Borrower" is required use the property "as Borrower's principal residence." The provision then expressly states that the term "principal residence" shall have the "same meaning as in the Loan Agreement." Had the parties intended for the term "Borrower" in the reverse mortgage to have the same meaning as in some other document, the parties

18

In sum, the Non-Borrower Spouse Ownership Interest Certification is not integrated into the reverse mortgage.

### iii.    *Response to the dissents*

In his dissent, Chief Judge Emas suggests that unrecorded, collateral documents can, and should, inform the determination of "who is a mortgagor" in this case.  While he does not directly take issue with this Court's holdings in Smith and Edwards, the Chief Judge distinguishes those cases based on the unrecorded, collateral documents that are contained in this case's record, but that were absent in Smith and Edwards.  While obviously not his intention, the Chief Judge's conclusion in this regard seems to suggest that, notwithstanding a Florida district court's construction of identical language in an identical instrument, a Florida circuit court may conclude an ambiguity exists based on such unrecorded, collateral documents.

Judge Miller, in her separate dissent, takes a somewhat different approach, and advocates receding from this Court's precedent in Smith and Edwards.

certainly could have employed similar language in defining the term "Borrower." They did not.

We also note that the Non-Borrower Spouse Ownership Interest Certification was neither appended to, nor incorporated in, the lender's complaint. Presumably, had this document been part of the contract documents upon which the lender based its entitlement to foreclose, it would have at least been referred to in the lender's complaint. It was not. See Fla. R. Civ. P. 1.130(a) ("All . . . contracts, . . . or documents on which action may be brought . . . , or a copy thereof or a copy of the portions thereof material to the pleadings, must be incorporated in or attached to the pleading.").

Relying principally upon precedent that a promissory note's terms control over inconsistent mortgage terms, Judge Miller suggests that OneWest may foreclose on Mrs. Palmero's homestead by virtue of an unrecorded promissory note that Mrs. Palmero did not sign.

OneWest's foreclosure claim against Mrs. Palmero, though, is premised **exclusively** on Mrs. Palmero's status as a party to the mortgage (see, footnotes 2 and 9, *supra*); she did not sign the note and is not a party to it. Indeed, as stated earlier, the note and mortgage are two separate and distinct agreements. See Sims, 37 So. 3d at 360. The note memorializes Mr. Palmero's debt to OneWest, while the mortgage defines the parameters of OneWest's ability to recover Mr. Palmero's debt from Mrs. Palmero. OneWest's and Mrs. Palmero's rights and obligations in this case flow from **only** the recorded instrument giving OneWest a security interest in Mrs. Palmero's homestead: the mortgage document.

While the dissenters' eloquent attempts to elevate the role of collateral documents, while diminishing the role of the mortgage document, in this case are admirable, we are concerned how Florida real estate transactions (and mortgage foreclosure actions) would be affected if we were to conclude that, as a matter of course, unrecorded, collateral documents could alter the **very parties** to a recorded mortgage document.[12]

_____

[12] Other than the reverse mortgage signed by Mrs. Palmero as "Borrower," no other documents were recorded with the Palmeros' reverse mortgage. As a

## III. Conclusion

OneWest's sole assertion entitling it to foreclose on the subject reverse mortgage was that Roberto Palmero, a borrower and Mrs. Palmero's spouse, had died. Yet, under the subject reverse mortgage, an express condition precedent to foreclosure when a "Borrower" dies is that the subject property is not the principal residence of a "surviving Borrower" under the mortgage. As Judge Logue stated in his dissent from the panel opinion that we now withdraw, "[b]ecause the mortgage and the nature of the spouse's signature in this case are identical to the ones in Smith and Edwards, we [apply] our rather unremarkable precedent that, as a matter of law, when the surviving spouse signed the mortgage as a borrower, as revealed by an examination of the mortgage itself, the spouse will be treated as a borrower for purposes of the mortgage." OneWest Bank, FSB v. Palmero, 43 Fla.

---

practical matter, and had the parties intended to qualify or alter Mrs. Palmero's borrower status so as to provide constructive notice to third parties, recordation of such qualifying documents was advisable. See Slachter v. Swanson, 826 So. 2d 1012, 1014 (Fla. 3d DCA 2001) (recognizing that the act of recording any document in the grantor/grantee index of the official records imputes constructive notice to creditors and subsequent purchasers of the document); Air Flow Heating & Air Conditioning, Inc. v. Baker, 326 So. 2d 449, 451-52 (Fla. 4th DCA 1976) ("We are not unmindful of the proposition that reference may be made in a recorded document to a deed or other document for the purpose of aiding any defect or uncertainty created by the recorded instrument. . . . However, the reference to the existence of another deed or unrecorded document must be Specific [sic] not only in terms of identifying the other deed or document with particularity but in putting a reasonable person on notice of the need to make reference to such other deed or unrecorded document.").

L. Weekly D827 (Apr. 18, 2018) (Logue J, dissenting), opinion withdrawn (April 24, 2019).

Smith is directly on point and controls this case. Mrs. Palmero is a co-borrower under the subject reverse mortgage, notwithstanding any inconsistent provisions in the collateral documents. Had the parties intended to characterize Mrs. Palmero as someone other than a "Borrower" – for instance, as a "Non-Borrowing Spouse" – the parties could have done so within the reverse mortgage. They did not; and this Court is powerless to rewrite the parties' reverse mortgage to do what the parties themselves assuredly did not do. See Fernandez v. Homestar at Miller Cove, Inc., 935 So. 2d 547, 551 (Fla. 3d DCA 2006) (concluding that where the terms of an agreement "are clear and unambiguous, 'the contracting parties are bound by those terms, and a court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties'" (quoting Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So. 2d 1000, 1003 (Fla. 2d DCA 1995))). Accordingly, because it is undisputed that Mrs. Palmero was still alive and the subject property was her primary residence on the date of trial, we affirm the final judgment on review for OneWest's failure to establish the occurrence of a condition precedent to its right to foreclose.[13]

_____

[13] Of course, OneWest retains the ability to file a new foreclosure action upon the future occurrence of any of the conditions precedent outlined in the subject reverse mortgage.

22

Affirmed.

SALTER, FERNANDEZ, LOGUE, LINDSEY and HENDON, JJ., concur.

EMAS, C.J., dissenting.

## I. INTRODUCTION

After a bench trial at which witnesses testified and exhibits were introduced, and following the submission of extensive posttrial memoranda, the trial court determined that Luisa Palmero was not a "borrower" under her husband's reverse mortgage.

The majority brushes aside the trial court's factual finding, holding instead that, as a matter of law, the mortgage unambiguously defined Mrs. Palmero as a borrower. In doing so, the majority opinion failed or refused to consider the other documents referred to by, and signed contemporaneously with, the mortgage.

I respectfully dissent, because: (1) the conflicting provisions of the mortgage and note created a patent ambiguity; (2) the documents referred to and described in the mortgage, and executed contemporaneously during this transaction, must be treated as part of the same writing and construed together with the mortgage and note in resolving this ambiguity and ascertaining the parties' intent; and (3) the trial court properly determined, in a factual finding supported by competent substantial evidence, that Luisa Palmero was not a "borrower" under the mortgage.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

24

In September 2006, Roberto and Luisa Palmero met with a reverse mortgage counselor and received "information about the implications of and alternatives to a reverse mortgage." In a session tailored to their unique financial circumstances, the Palmeros and the counselor discussed the impact of the reverse mortgage on their estate and heirs. Following the counseling session, Mr. and Mrs. Palmero executed a document certifying that they had discussed the financial implications of, and alternatives to, the reverse mortgage, and that they understood its advantages and disadvantages, the payment plan, and its costs.

In December 2006, the Palmeros mortgaged their home to Value Financial Mortgage Services, Inc. (The reverse mortgage was later assigned to OneWest Bank.) As part of the mortgage transaction, the following five documents were executed on December 20, 2006:

**1. <u>The Loan Application.</u>** In the loan application, the property was stated to be in Mr. Palmero's name. Mr. Palmero was named in the loan application as the borrower, and he signed as the "borrower." Although there was a space provided for a co-borrower's name and a space for a co-borrower's signature, those spaces were left blank–Mrs. Palmero was not named in the loan application as a co-borrower, nor did she sign the loan application as a co-borrower. Indeed, neither her name nor signature appears anywhere on the loan application.

**2. The Loan Agreement.**  In the loan agreement, "borrower" was defined as Mr. Palmero. Mr. Palmero, and no one else, signed the loan agreement as the borrower.   Indeed, neither Mrs. Palmero's name nor her signature appears anywhere on the loan agreement.

**3. The Non-Borrower Spouse Ownership Interest Certification.**  In a document entitled "Non-Borrower Spouse Ownership Interest Certification," the Palmeros acknowledged that they were given ample time "prior to the closing of this reverse mortgage loan to consult with  independent  legal  and tax  experts  of [their] own  choosing  regarding the ownership or vesting of real property that will serve  as  collateral  for  the  reverse  mortgage  loan."   Mr.  Palmero  signed  this certification as the Borrower, while Mrs. Palmero signed as the "Non-Borrower Spouse."

In Mrs. Palmero's portion of the document, just above her signature as the Non-Borrower Spouse, Mrs. Palmero expressly certified the following:

I understand and acknowledge that should my spouse predecease me or fail to occupy the home where I reside as his . . . principal residence, and unless another means of repayment is obtained, the home where I reside may need to be sold to repay Reverse Mortgage debt incurred by my spouse.  If the home where I reside is required to be resold, I understand that I may be required to move from my residence.

26

**4. <u>The Note.</u>**  The note defined "borrower" to mean "each person signing at the end of this Note."  Mr. Palmero was the only person who signed at the end of the note as the borrower.  Indeed, neither Mrs. Palmero's name nor her signature appears anywhere on the note.

**5. <u>The Mortgage.</u>**  In the mortgage, the borrower was defined as "Roberto Palmero, a married man reserving a life estate unto himself with the r[e]mainderman to Luisa Palmero, his wife, Idania Palmero, a single woman and Rene Palmero, a single man."  The signature block read, "BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it."  Mr. and Mrs. Palmero each signed as the Borrower below this sentence.

Under the terms of the loan, the bank paid Mr. Palmero from May 2007 through July 2008.[14]  Mr. Palmero passed away in August 2008.  As provided for in the mortgage, the bank accelerated the loan in November 2008.  When Mrs.

---

[14] The evidence at trial established that, because Mr. Palmero was the *only* borrower under the terms of the loan agreement, he qualified for—and received—a higher amount than would have been paid had Mrs. Palmero been a co-borrower. At the time of the agreement, Mr. Palmero was 83 years old; Mrs. Palmero was 71. The bank's representative testified that when spouses apply as co-borrowers, the bank uses the age of the youngest spouse to calculate the amount of the payment made to the borrowers.  The Palmeros knew that, because Mr. Palmero was the only borrower, the bank paid out a higher amount on the reverse mortgage than it would have paid had Mr. Palmero *and* Mrs. Palmero been co-borrowers under the agreement.

Palmero did not pay the balance of the loan, the bank filed a complaint to foreclose on the home.

The case proceeded to trial, and after taking testimony and examining the loan documents, the trial court concluded that Mrs. Palmero was not a borrower, but determined that under the federal reverse mortgage statute, 12 U.S.C. § 1715z-20(j), "the repayment of a reverse mortgage loan is deferred until the death of both the borrowing homeowner and the homeowner's spouse."[15] Judgment was entered for Mrs. Palmero, and the bank has appealed.

### III. STANDARD OF REVIEW

"A trial court's construction of notes and mortgages involves pure questions of law, and therefore is subject to de novo review." Smith v. Reverse Mortg. Sols., Inc., 200 So. 3d 221, 224 (Fla. 3d DCA 2016) (citing Nagel v. Cronebaugh, 782 So. 2d 436, 439 (Fla. 5th DCA 2001)). Likewise, "whether an ambiguity exists in a contract is a question of law," subject to de novo review. Weisfeld-Ladd v. Estate of Ladd, 920 So. 2d 1148, 1150 (Fla. 3d DCA 2006) (quoting Wagner v. Wagner, 885 So. 2d 488, 492 (Fla. 1st DCA 2004)). However, if an ambiguity exists, the resolution of that ambiguity is a question of fact which we

---

[15] I agree with the majority's conclusion that the trial court erred in its *sua sponte* consideration and reliance upon the federal reverse mortgage law, which was never pleaded, raised or argued by the parties below. See Maj. Op. at 10.

review for competent substantial evidence.  Id. at 1150.  See also Antoniazzi v. Wardak, 259 So. 3d 206 (Fla. 3d DCA 2018).

**IV. DISCUSSION**

The majority opinion takes issue with the trial court's finding that Mrs. Palmero was not a borrower.  Instead, and relying on Smith, 200 So. 3d at 221, and Edwards v. Reverse Mortgage Solutions, Inc., 187 So. 3d 895 (Fla. 3d DCA 2016), the majority concludes that, under the note and mortgage and as a matter of law, Mrs. Palmero was unequivocally and unambiguously a borrower in this reverse mortgage transaction.

**1.  *Smith* and *Edwards* are Inapplicable**

I do not believe that Smith or Edwards is controlling in this case because, unlike those cases, the record here provides documentary evidence of the complete loan transaction which establishes the parties' intent that Mr. Palmero be the sole borrower.

In Smith, there was no transcript of the trial.  200 So. 3d at 224 (noting "the absence of a transcript.")  There was no evidence as to how the property was titled. Id. at 226 n.8 ("It is not clear from the record how the subject property was titled at the time the mortgage was executed by Mr. and Mrs. Smith.").  And the loan application was not a part of the record on appeal.  Id. at 223 n.1 (noting: "While

29

the subject note and mortgage both reference a 'Loan Agreement' . . . no Loan Agreement is contained in the record on appeal.")

In Edwards, 187 So. 3d at 896, the record was also severely limited because the defendant failed to appear or respond to the complaint, resulting in entry of a default. There was a nonjury trial, but the defendant was not allowed to testify and was not permitted to assert any defenses. Id. The only loan documents presented to the trial court were the mortgage and note. Id. (noting: "The trial court held that [the bank] was entitled to foreclosure because Mr. Edwards was the only borrower under the note, and therefore, the only borrower for purposes of the mortgage's acceleration provision.")

## 2. The Mutual Construction Principle is Applicable

Conversely, and as described earlier, the record in the instant case contains a number of documents which Mr. Palmero, Mrs. Palmero, or both Palmeros signed contemporaneously as a part of the transaction. It is apodictic: "Where other instruments are executed contemporaneously with a mortgage and are part of the same transaction, the mortgage may be modified by these other instruments. All the documents should be read together to determine and give effect to the intention of the parties." Sardon Found. v. New Horizons Serv. Dogs, Inc., 852 So. 2d 416, 420 (Fla. 5th DCA 2003). See also MV Ins. Consultants v. NAFH Nat'l Bank, 87 So. 3d 96, 99 (Fla. 3d DCA 2012) (holding: "Documents executed by the same

parties, on or near the same time, and concerning the same transaction or subject matter are generally construed together as a single contract") (quoting <u>Quix Snaxx, Inc. v. Sorensen</u>, 710 So. 2d 152, 153 (Fla. 3d DCA 1998)); <u>Citicorp Real Estate, Inc. v. Ameripalms 6B GP, Inc.</u>, 633 So. 2d 47, 49 (Fla. 3d DCA 1994) (noting: "The law is well established that two or more documents executed by the same parties, at or near the same time, and concerning the same transaction or subject matter are generally construed together as a single contract"); <u>Bianchi's from Roma, Inc. v. Big Five Club, Inc.</u>, 630 So. 2d 642, 643 (Fla. 3d DCA 1994) (concluding that "a release which was signed simultaneously by the parties with the written agreement sued upon [thereby requiring that both of these instruments be construed together in determining the parties' intent] did not, as a matter of law, extinguish the parties' obligations to each other under the written agreement" (alteration in original)).

Nevertheless, the majority eschews this well-accepted legal principle of mutual construction, choosing not to consider any documents other than the mortgage and note. The primary reason given by the majority for not applying this principle is its overbroad application of this court's opinion in <u>Smith</u>. I do not read <u>Smith</u> as establishing a blanket rule that, any time a surviving spouse's name and signature appear on a reverse mortgage, that surviving spouse, as a matter of law, must be treated as a co-borrower. The procedural posture of <u>Smith</u> was such that

31

the panel decision was limited to the pleadings (including their attachments, the mortgage and note), and the final judgment entered following a trial. In the absence of a trial transcript, the appellate court was limited to a construction of these two documents. It was upon this limited record, and this court's de novo review in Smith, that we held the surviving spouse was a co-borrower. Smith, 200 So. 3d at 228. Smith does not stand for the proposition that, for all situations and for all time, regardless of the record, a surviving spouse whose name appears on a mortgage must, as a matter of law, be treated as a borrower.

### 3. The Ambiguity is Patent

In this case, the trial court was presented with a note signed by Mr. Palmero **only** (and defining the "borrower" as Mr. Palmero **only**) and a mortgage signed by both Mr. and Mrs. Palmero. This was the same situation in Smith which created an ambiguity as to who was the borrower (or borrowers) in the mortgage transaction. The record before us in this case, unlike in Smith, reveals that the trial court, charged with resolving this patent ambiguity, considered the contemporaneously executed documents in assessing and ultimately determining the parties' intent. The trial court concluded that Mrs. Palmero was not a borrower, and that conclusion is supported by competent and substantial evidence, including the loan application, the loan agreement, and the Non-Borrower Spouse Ownership Interest

32

Certification, which self-evidently certifies that Mrs. Palmero was not (and did not intend to be) a borrower.

I take no issue with the majority's reference to the well-established principle that the mutual construction doctrine may not be used to *create* an ambiguity, but only to assist in clarifying an existing ambiguity. See Maj. Op. at 16. However, this principle is gratuitously invoked by the majority, as I do not suggest that consideration of these contemporaneous documents *creates* an ambiguity. What I do suggest–indeed what is inescapable from this record–is that the mortgage itself,[16] or at the very least the mortgage and the note together, create an ambiguity as to whether Mrs. Palmero is a borrower. This ambiguity is patent, raising a question of fact to be resolved by the trier of fact. The trial court properly resolved this question of fact by conducting a trial, taking testimony and considering exhibits introduced into evidence, including the loan application, the loan agreement, and the Non-Borrower Spouse Ownership Interest Certification.

---

[16] The majority relies heavily on the fact that both Mr. Palmero and Mrs. Palmero signed the last page of the mortgage under signature blocks indicating they are each a "borrower." However, the majority fails to account for the patent ambiguity created by page one of that very same mortgage, where the term "Borrower" is defined as "Mr. Palmero, a married man reserving a life estate to himself with the r[e]mainderman to Luisa Palmero, his wife, Idania Palmero, a single woman and Rene Palmero, a single man . . . ." As Mrs. Palmero's own expert acknowledged while opining on the language of the mortgage: "The borrower who is defined on the first page of the mortgage is Roberto Palmero" and "[i]s not Mrs. Luisa Palmero."

33

## 4. The Contemporaneously Executed Documents Resolve the Patent Ambiguity.

The majority also concludes these other documents cannot be considered because they were not recorded. However, the recordation of the document (or, as in this case, the non-recordation) in no way affects the validity of documents executed to formalize an agreement. See Mayfield v. First City Bank of Fla., 95 So. 3d 398, 401 (Fla. 1st DCA 2012) (holding: "Section 695.01 is a 'notice' recording statute, the primary purpose of which is to protect subsequent purchasers (including mortgagees and creditors) against claims arising from prior unrecorded instruments") (citing Argent Mortg. Co., LLC v. Wachovia Bank, N.A., 52 So. 3d 796, 799 (Fla. 5th DCA 2010)); Townsend v. Morton, 36 So. 3d 865, 869 (Fla. 5th DCA 2010) (holding: "Morton's explanation that the deed's unrecorded status renders it ineffective . . . is wrong. The fact that a deed is unrecorded does not affect the efficacy or validity of the instrument as between the grantor and grantee or those with notice. Hence, the purpose of recording a deed is to give notice to third parties, rather than validate an otherwise properly executed instrument between the parties") (citations omitted).

The contemporaneously executed documents in this case did not need to be recorded to provide the public with notice of the parties' interest in the property.

34

Neither does their non-recordation affect their evidentiary value in assessing the intent of the parties and determining the rights granted and obligations imposed in this transaction. Quite simply, these contemporaneously executed documents, when read together with the note and mortgage, resolved the patent ambiguity created between the note (in which Mrs. Palmero was not listed as a borrower, and did not sign the note in any capacity) and the mortgage (in which Mrs. Palmero signed as "borrower" even though that term was defined in the mortgage to mean only Mr. Palmero).

Following a non-jury trial, the trial court found an ambiguity existed, and properly resolved that ambiguity, finding that Mrs. Palmero had knowingly and voluntarily entered into an agreement by which she expressly:

● Agreed, acknowledged and understood she was a <u>non-borrowing</u> spouse;

● Agreed it was in her best interest to enter into this reverse mortgage loan with the understanding that any interest she had in the real property would serve as collateral for the reverse mortgage loan;

● Understood and acknowledged that if her husband predeceased her, the home could be sold to repay the debt; and

● Understood and acknowledged that if the home were to be sold upon her husband's death, she would be required to move out of the home.

**V. CONCLUSION**

In order to reach its conclusion that, as a matter of law, Mrs. Palmero was a borrower under the mortgage, the majority considers in isolation a single signature line of the mortgage, while failing to consider the contradictory portions of that same mortgage which defines the borrower as Mr. Palmero only; ignores the fact that the contemporaneously executed note contains only Mr. Palmero's name and signature as borrower; and ignores altogether the other contemporaneously executed documents, which establish the intentions of the parties that only Mr. Palmero was the borrower and that the loan was required to be repaid when Mr. Palmero died.[17]

Reading these contemporaneously executed documents together, and in a manner to carry out the express intentions of the parties, there is competent substantial evidence to support the fact-finder's well-reasoned determination at the conclusion of the trial: Mrs. Palmero was not a borrower under the mortgage.

---

[17] While the majority opinion deems Mrs. Palmero a co-borrower under the mortgage, Mr. Palmero remains the only borrower under the note. This is significant because the note and the mortgage contain the same acceleration provisions. Under the mortgage as construed by the majority, the bank is entitled to accelerate the loan only after both Mr. Palmero *and* Mrs. Palmero pass away. However, under the note, the bank is entitled to accelerate the loan upon Mr. Palmero's death. The majority opinion fails to address this issue, which is especially troubling in light of the "general rule . . . that, if there is a conflict between the terms of a note and mortgage, the note should prevail." Hotel Mgmt. v Krickl, 158 So. 118, 119 (Fla. 1934). See also Cleveland v. Crown Fin., LLC, 183 So. 3d 1206 (Fla. 1st DCA 2016); Lewis v. Estate of Turcol, 709 So. 2d 186 (Fla. 5th DCA 1998); Gibbs v. Hicks, 146 So. 2d 391 (Fla. 1st DCA 1962).

Because she was not a "borrower," she was not entitled under the terms of the mortgage to remain in the home as a "surviving borrower" following the death of her husband.

For these reasons, I respectfully dissent. I would affirm the trial court's finding that Mrs. Palmero was not a borrower, and would reverse the trial court's alternative conclusion that she was nonetheless entitled to judgment in her favor upon application of the reverse mortgage law. I would remand this cause to the trial court for entry of judgment in favor of OneWest.

MILLER, J., dissenting.[18]

Although I agree with the well-articulated dissent of Chief Judge Emas, I nonetheless write separately to further express my views that diverge from today's decision. I conclude that, in addition to failing to mutually construe the contemporaneously executed documents, the majority dispenses with a body of well-reasoned, established jurisprudence, the controlling provisions of the promissory note, and the express terms of the mortgage in determining that the inclusion of Mrs. Palmero's unnotarized signature on the mortgage renders her a "Borrower," as a matter of law.[19]

## STANDARD OF REVIEW

"A court must 'interpret and apply the provisions of mortgages the same way [it] interpret[s] and appl[ies] the provisions of any other contract.'" Bank of N.Y. Mellon v. Nunez, 180 So. 3d 160, 162 (Fla. 3d DCA 2015) (quoting Green Tree Servicing, LLC v. Milam, 177 So. 3d 7, 12-13 (Fla. 2d DCA 2015)). "A trial court's construction of notes and mortgages involves pure questions of law, and

---

[18] I did not participate in the initial vote on suggestion for rehearing en banc. However, I note that a motion for rehearing en banc "must establish that the case, rather than an issue in the case, is of exceptional importance." Univ. of Miami v. Wilson, 948 So. 2d 774, 788 (Fla. 3d DCA 2006) (Shepherd, J., concurring).

[19] Although both signatures appear on the mortgage, only Mr. Palmero acknowledged the document before a notary.

therefore is subject to de novo review." Smith v. Reverse Mortg. Sols., Inc., 200 So. 3d 221, 224 (Fla. 3d DCA 2016). "The initial determination of whether [a] contract term is ambiguous is a question of law for the court, and, if the facts of the case are not in dispute, the court will also be able to resolve the ambiguity as a matter of law." Strama v. Union Fidelity Life Ins. Co., 793 So. 2d 1129, 1132 (Fla. 1st DCA 2001) (citation omitted).

## ANALYSIS

Contrary to longstanding principles of law, in conferring the unequivocal status of "Borrower" upon Mrs. Palmero, the majority considers the appearance of her signature on the last page of the mortgage in isolation. "Under Florida law, contracts are construed in accordance with their plain language, as bargained for by the parties." Konsulian v. Busey Bank, N.A., 61 So. 3d 1283, 1285 (Fla. 2d DCA 2011) (citing Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000)). Further adages of contract interpretation dictate that courts "reviewing [a] contract in an attempt to determine its true meaning . . . must review the entire contract without fragmenting any segment or portion." J.C. Penney Co., Inc. v. Koff, 345 So. 2d 732, 735 (Fla. 4th DCA 1977) (citing Ross v. Savage, 66 Fla. 106, 126, 63 So. 148, 155 (1913) ("[A]ll the different provisions of such instrument must be looked to, and all construed so as to give the effect to each and every [one] of them, if that can reasonably be done.")). "Every provision in a contract should be

given meaning and effect." Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 941 (Fla. 1979) (citations omitted). To that end, courts are required to "read provisions of a contract harmoniously."[20] City of Homestead v. Johnson, 760 So. 2d 80, 84 (Fla. 2000) (citations omitted).

### i. The note prevails

As a predicate, the majority finds Smith, 200 So. 3d 221, and Edwards v. Reverse Mortgage Solutions, Inc., 187 So. 3d 895 (Fla. 3d DCA 2016), to be controlling. However, neither the majority opinion nor these two decisions reconcile a body of entrenched jurisprudence mandating that if there is "a conflict between the terms of a note and mortgage, the note should prevail."[21] Hotel Mgmt. Co. v. Krickl, 117 Fla. 626, 629, 158 So. 118, 119 (1934) (citing 19 R.C.L.

---

[20] Smith, 200 So. 3d at 231 (Shepherd, J., dissenting) ("The decision of the majority creates the anomalous result that the 'Borrower'—expressly defined in two simultaneously executed and related documents . . . —now has **two** meanings.").

[21] To the extent that Smith and Edwards hold the terms of the mortgage should be considered in isolation, or take precedence over the integrated, unambiguous terms of the note, I would recede from both cases. See Washington-Jarmon v. OneWest Bank, FSB, 513 S.W.3d 103, 109 (Tex. Ct. App. 2016) (holding that, despite wife appearing as co-borrower on mortgage, her omission from the promissory note rendered her a non-borrowing spouse as a matter of law, as "if there are conflicting terms in a note and a deed of trust, the terms of the note control.") (citing Larsen v. OneWest Bank, FSB, No. 14-14-00485-CV, at *12 (Tx. Ct. App. Nov. 5, 2015) ("[T]he terms in a Note prevail over the terms in a Deed of Trust."); Pentico v. Mad-Wayler, Inc., 964 S.W.2d 708, 715 (Tx. Ct. App. 1998)); see also In re D'Alessio v. CIT Bank, N.A., 587 B.R. 211 (Bankr. D. Mass. 2018) (finding spouse was not a borrower within the terms of the loan documents executed in connection with a reverse mortgage transaction, as spouse only signed the mortgage).

40

493; Clark v. Paddock, 132 P. 795, 793 (Idaho 1913)); see also First Interstate Bank of Fargo, N.A. v. Rebarchek, 511 N.W.2d 235, 241 (N.D. 1994); A-1 Fin. Co. v. Nelson, 85 N.W.2d 687, 692 (Neb. 1957); Brown v. First Nat'l Bank of Montgomery, 75 So. 2d 141, 143 (Ala. 1954); Smith v. Kerr, 157 A. 314, 317 (Me. 1931); Pac. Fruit Exch. v. Duke, 284 P. 729, 730 (Cal. Dist. Ct. App. 1930); Tipton v. Ellsworth, 109 P. 134, 138 (Idaho 1910).

This principle is well-founded, in recognition of the nature of each instrument. The note represents a promise to pay, while the mortgage merely secures that promise in the event of a default. See, e.g., HSBC Bank USA, Nat'l Ass'n v. Buset, 241 So. 3d 882, 891 (Fla. 3d DCA 2018) ("[T]he assignment of the mortgage was superfluous. It was unnecessary because Florida law has always held that the mortgage follows the note.") (citing First Nat'l Bank of Quincy v. Guyton, 72 Fla. 43, 44, 72 So. 460, 460 (1916); US Bank, NA v. Glicken, 228 So. 3d 1194, 1196 (Fla. 5th DCA 2017)). "It is elementary, absent contrary contract, that the mortgage security follow[s] the note." Am. Cent. Ins. Co. of St. Louis v. Whitlock, 122 Fla. 363, 367, 165 So. 380, 382 (1936). "A 'mortgage is the security for the payment of the negotiable promissory note.'" Cleveland v. Crown Fin., LLC, 183 So. 3d 1206, 1209 (Fla. 1st DCA 2016) (quoting Perry v. Fairbanks Capital Corp., 888 So. 2d 725, 727 (Fla. 5th DCA 2004)). "A promissory note is

41

not a mortgage." Id. (citing Bank of N.Y. Mellon v. Reyes, 126 So. 3d 304, 308

(Fla. 3d DCA 2013)). Rather,

> The promise to pay is one distinct agreement, and, if couched in proper terms is negotiable. The pledge of real estate to secure that promise is another distinct agreement, which ordinarily is not intended to affect in the least the promise to pay, but only to give a remedy for failure to carry out the promise to pay. The holder of the note may discard the mortgage entirely, and sue and recover on the note.

Id. at 1210 (quoting Taylor v. Am. Nat'l Bank of Pensacola, 63 Fla. 631, 652, 57

So. 678, 685 (1912)). Therefore, the terms of the note prevail over the mortgage,

as it is the note that actually gives rise to the debt. See Supria v. Goshen Mortg.,

LLC, 232 So. 3d 422, 424 (Fla. 4th DCA 2017) ("[A] mortgage is but an incident

to the debt, the payment of which it secures.") (alteration in original) (quoting

Peters v. Bank of N.Y. Mellon, 227 So. 3d 175, 180 (Fla. 2d DCA 2017)).

**ii. The note expressly defines Mr. Palmero as the sole "Borrower"**

Here, the note defines Mr. Palmero as the sole "Borrower." It states:

"Borrower means each person signing at the end of this Note."[22] While the note

reflects two signature lines, each labeled "Borrower," it was only signed by Mr.

Palmero. Thus, Mr. Palmero was the sole borrower under the note. As Mr.

---

[22] The majority opinion is correct–"[h]ad the parties intended for the term 'Borrower' in the reverse mortgage to have the same meaning as in some other document, the parties certainly could have employed similar language in defining the term 'Borrower.' They did not." Nonetheless, contrary to its own admonition, the majority opinion imports the note's definition of "Borrower," "each person signing at the end of th[e] Note," into the mortgage.

Palmero was the sole borrower under the note, and the note prevails over the mortgage, upon his death the lender was unambiguously endowed with the right to accelerate the debt and foreclose the mortgage.[23]

### iii.   The mortgage designates Mr. Palmero as the sole "Borrower"

Similarly, the mortgage designates only Mr. Palmero as the "Borrower." Indeed, the mortgage states, "[t]he mortgagor is ROBERTO PALMERO . . . ('Borrower')." Although the note defines "Borrower" as "each person signing at the end of th[e] Note," the mortgage contains no equivalent provision. Thus, under the express terms of the mortgage, Mrs. Palmero's unnotarized signature on the attestation page does not confer upon her the status of "Borrower." See Am. Home Assurance Co. v. Larkin Gen. Hosp., Ltd., 593 So. 2d 195, 197 (Fla. 1992) (A determination of intent requires consideration of a contract's language, subject matter, and object and purpose).

### iv.   The mortgage expressly integrates the note

---

[23] The promissory note contains the following provision:

**Immediate Payment in Full**

(A) Death or Sale

Lender may require immediate payment in full of all outstanding principal and accrued interest, if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower . . .

The mortgage contains identical language to this effect.

The conclusion that Mr. Palmero is the sole "Borrower" is further urged by entrenched rules of contractual integration. It is well-established that "a reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement . . . for the purpose specified." <u>Guerini Stone Co. v. P.J. Carlin Constr. Co.</u>, 240 U.S. 264, 277, 36 S. Ct. 300, 306, 60 L. Ed. 636 (1916). Moreover, "[i]n interpreting a contract, '[c]ourts are not to isolate a single term or group of words and read that part in isolation; the goal is to arrive at a reasonable interpretation of the text of the **entire agreement** to accomplish its stated meaning and purpose.'" <u>Horizons A Far, LLC v. Plaza N 15, LLC</u>, 114 So. 3d 992, 994 (Fla. 5th DCA 2012) (emphasis added) (quoting <u>Delissio v. Delissio</u>, 821 So. 2d 350, 353 (Fla. 1st DCA 2002)).

Here, the mortgage states, "Borrower has agreed to repay to Lender . . . [t]he agreement to repay is evidenced by Borrower's Note dated the same date as this [mortgage]," and "[t]his [mortgage] secures to Lender . . . the performance of **Borrower's covenants and agreements under this [mortgage] and the Note** . . . **For this purpose**, Borrower does hereby grant and convey to Lender the [property]."[24] (Emphasis added). Thus, as the mortgage integrates the note,

---

[24] The principle *expressio unius est exclusion alterius*, the expression of one thing implies the exclusion of others, should guide the analysis. <u>See</u> 5 Corbin on Contracts § 24.28 (2018) ("If the parties in their contract have specifically named one item or if they have specifically enumerated several items of a larger class, a reasonable inference is that they did not intend to include other, similar items not listed."); <u>see, e.g.</u>, <u>Shumrak v. Broken Sound Club, Inc.</u>, 898 So. 2d 1018, 1020

44

through acknowledgment of the underlying covenants and agreements, both documents must be mutually construed, the last page of the mortgage may not be read in isolation, and foreclosure upon the death of the sole "Borrower" was authorized.

### v. Harmonization of the note and mortgage renders Mr. Palmero the sole "Borrower"

Finally, we are required "to read provisions of a contract harmoniously in order to give effect to all portions thereof." Johnson, 760 So. 2d at 84. In his dissent in Smith, noting an identical purported conflict between the note and mortgage, Judge Shepherd sought harmonization. There, he concluded the unstated purpose of the inclusion of the non-borrowing spouse's name on the mortgage was to establish enforceability upon the death of the borrowing spouse:

> [A] necessary purpose for the signature is that the mortgage would have been unenforceable absent [Mrs. Smith's] joinder of the document. See Art. X, § 4(c), Fla. Const. ("The owner of homestead real estate, joined by the spouse if married, may alienate homestead by mortgage, sale, deed or gift ..."); Pitts v. Pastore, 561 So. 2d 297, 301 (Fla. 2d DCA 1990) (holding that a mortgage is ineffectual as a lien until such time as either the spouse joins in the alienation or the property loses its homestead status.). This imputation of purpose for

---

(Fla. 4th DCA 2005) ("It is a fundamental principle of contract construction, known as *expressio unius est exclusion alterius*."). Here, to the exclusion of any other name, Mr. Palmero, alone, is named in: (1) the definition of "Borrower" in the mortgage; (2) the definition of "Borrower" in the note; and (3) the notary's attestation statement below the signatures on the mortgage. As such, a reasonable inference is that the parties did not intend to include Mrs. Palmero as a "Borrower."

45

[Mrs.] Smith's signature is harmonious with the evident intent of the drafters in the first paragraph of the mortgage document.

Smith, 200 So. 3d at 231 (Shepherd, J., dissenting).

Similarly, here, the trial court found, based upon the evidence presented, "Mrs. Palmero's signature on the [mortgage] serves as a practical protection for lenders . . . in order to ensure that Mrs. Palmero, as the non-borrowing spouse, will not invoke a homestead claim to the mortgaged property as a defense to foreclosure, her signature on the mortgage instrument would be necessary." Thus, the object and purpose of Mrs. Palmero's signature on the mortgage does not defeat the parties' intent that Mr. Palmero serve as the sole "Borrower" in the transaction, and again, Mr. Palmero's death licensed the lender to require payment in full.

## CONCLUSION

"[C]ourts may not rewrite, alter, or add to the terms of a written agreement between the parties and may not substitute their judgment for that of the parties in order to relieve one from an alleged hardship of an improvident bargain." Int'l Expositions, Inc. v. City of Miami Beach, 274 So. 2d 29, 30-31 (Fla. 3d DCA 1973). "Rather, it is a court's duty to enforce the contract as plainly written." Okeechobee Resorts, LLC v. E Z Cash Pawn, Inc., 145 So. 3d 989, 993 (Fla. 4th DCA 2014) (citation omitted).

Here, the appearance of Mrs. Palmero's unnotarized signature on the attestation page of the mortgage cannot be used to circumvent unambiguous, bargained-for contractual language. Mr. Palmero was the sole defined "Borrower" under both the note and mortgage. Moreover, as the note and mortgage must be harmonized to effect the intent of the parties, and any purported conflicts between the note and mortgage should be resolved in favor of the note, I conclude, under any construction, Mr. Palmero was the sole "Borrower," and upon his death, the lender was entitled to foreclose. See also In re Clayton, 802 S.E.2d 920, 926 (N.C. Ct. App. 2017) ("As the sole obligor under the Note and loan agreement, these provisions make clear that [Appelle's deceased husband] was the only "surviving borrower" contemplated by the Deed of Trust's acceleration provision."); TRG Columbus Dev. Venture, Ltd. v. Sifontes, 163 So. 3d 548, 552 (Fla. 3d DCA 2015) ("While this language is not a model of clarity, we must give it the meaning and effect intended by the parties to the contract.") (citation omitted).

Accordingly, I concur with the majority that "the federal reverse mortgage law was not properly considered by the trial court." Nonetheless, for the foregoing reasons, I would reverse the final judgment under review and remand this cause for entry of judgment in favor of OneWest Bank, FSB.

47